STATE OF MISSOURI, Respondent, *v.* JOHN CANTON, Appellant.

1. *City Ordinances — Beer Saloons — Females found employed in carrying beer — Construction of Ordinance.* — The ninth subdivision of section 1, article IV, of ordinance 5421, of the ordinances of St. Louis, was intended to embrace any one of the class of persons therein designated "found employed" in saloons carrying beer, whether they act as proprietors or servants.

### *Appeal from St. Louis Criminal Court.*

*Cline, Jamison & Day*, for appellant.

The language of the ninth subdivision of article IV of ordinance 5421 is equally applicable to prostitutes who carry beer in their own saloons as it is to those who carry beer in saloons belonging to others, and the reason for preventing it in the one case is the same as in the other.

*Shreve & Staples*, for respondent.

WAGNER, Judge, delivered the opinion of the court.

This was a criminal prosecution for an assault and battery alleged to have been committed by the defendant, a member of the metropolitan police in the city of St. Louis, on the person of one Mollie Fitzgerald. The case was tried in the court below, on an agreed statement of facts, which are inserted in the bill of exceptions, and the defendant was convicted. The agreed statement shows that, on the 12th day of February, Mollie Fitzgerald, Annie McNash, Jennie Lyman, and Jennie Reilly, were engaged, under the name and style of Jennie Lyman & Co., in the basement story of a house on the southwest corner of Fifth and Market streets, in the city and county of St. Louis, in vending beer and ale, it being then and there a drinking and beer saloon; that they had a license to vend spirituous and malt liquors at said saloon, as keepers thereof, duly issued by the State and by the city and county of St. Louis, at that time, and were the owners and proprietors of said saloon, and were all prostitutes and lewd women, and having the reputation of lewd women and prostitutes; and that, on the night of said 12th day of February, said saloon

was attended by a large number of customers, comprised of men and boys, but was conducted in an orderly, quiet manner, and no complaint was made against them; and that while said Mollie Fitzgerald and her associates were engaged in carrying beer in said saloon to their customers, and in waiting on them, said defendant, who was then and there a metropolitan police officer, entered said saloon, and with force arrested and carried said Mollie to the station-house in that district in said city, and caused her to be imprisoned and locked up under an accusation of vagrancy, and to be reported to the recorder as a vagrant. At the time these proceedings were had, section 12 of an ordinance of the city of St. Louis establishing and regulating the police department was in full force, and is as follows: "It shall be the duty of the privates to be punctual at roll-call; to obey punctually to the best of their ability the orders of the chief of police, the captain of the city guard, and the lieutenant to whose command they may be assigned; to remain on their respective beats, and not to leave the same except in the discharge of their respective duties. They shall arrest all persons found in the act of violating any law or ordinance. They shall arrest all persons found under suspicious circumstances, and who cannot give a good account of themselves, and convey all persons so arrested to the station-house of the district in which any arrest may be made, and report to the lieutenant of such district the cause of the arrest, the names of the witnesses, and the facts connected therewith. The members of the guard shall have authority to enter any house, inclosure, or other place, when a breach of the peace, or crime, or breach of ordinance has been or is being committed, and to arrest the offender, or offenders, but shall not enter any dram-shop, bawdy-house, or other place of degradation, except in discharge of their duty." Also, section 1 of article IV of ordinance No. 5421, entitled "An ordinance concerning misdemeanors," which reads as follows: "SEC. 1. A vagrant, under the meaning and provisions of this ordinance, shall be deemed to be * : * * " "*Ninth*—Any prostitute, courtesan, bawd, or lewd woman, or any female inmate of any bawdy-house, house of prostitution, house of assignation, brothel, or house of

bad repute, who shall be found wandering about the streets in the night-time, or frequenting dram-shops or beer-houses, or any such lewd woman having the reputation of a prostitute who shall be found employed as a beer-carrier, or waiting, attending, or carrying beer, or any other thing, in any beer or drinking saloon, either in the day or night time, or who may be found employed in singing or dancing in a lewd or indecent manner in such a house." "SEC. 6. Whoever shall be convicted of being a vagrant under the provisions of section first of this article shall be adjudged to pay a fine as follows : if under the first or ninth clause, not less than ten nor more than fifty dollars."

On the above facts the court gave this instruction : "If the court, sitting as a jury, find from the evidence that the witness, Mollie Fitzgerald, was the owner and proprietor of the saloon situated on the southwest corner of Market and Fifth streets, in the city of St. Louis ; that she was duly authorized by license from the State of Missouri and the county and city of St. Louis to carry on the business of selling beer and other liquors at said saloon ; and that, while she was quietly and peaceably attending to her business in said saloon, waiting on customers and carrying or delivering beer, the defendant seized hold of her, and forcibly and against her will ejected her from her own premises, and incarcerated her in the calaboose, then the court should find the defendant guilty. " The defendant asked the court to declare the law to be that under the agreed facts of the case the defendant was not guilty, which declaration the court refused to give. We have not been favored in this court with an argument on the part of the respondent, but the instruction given in the court below sufficiently indicates the ground relied on for an affirmance. About the facts in the case there can be no doubt. The duties of the officers and privates of the metropolitan police are clearly and precisely expressed, and the whole question turns upon the construction to be given to the ninth paragraph of section 1, article IV, in the ordinance numbered 5421. The view evidently taken in the Criminal Court was, that to render any of the class of persons spoken of in the ninth subdivision of that section liable to be arrested and pro-

ceeded against for vagrancy on account of being a carrier or waiter, being engaged in attending or carrying beer for customers, it was necessary that she should be employed as a servant, and that such prosecution or arrest could not be predicated of a person who was the owner or proprietor of the premises. If this proposition be correct, the judgment was undoubtedly right, and should be affirmed. The point for decision is, then, narrowed down to what scope and meaning should be attached to the words "found employed," and what was the intention had in view by the framers of the ordinance at its passage. The word "employment" does not necessarily import an engagement or rendering services for another. A person may as well be "employed" about his own business as in the transaction of the same for a principal. One of the definitions given by Webster of the word "employment" is "occupation; business; that which engages the head or hands." Worcester says "employment means business; occupation; object of industry; engagement; avocation; calling, or profession." As the word may mean either the act of being employed for one's self, in attending to his own affairs, or in attending to the duties and services of another, it is necessary to construe it with reference to the particular meaning which should be applied to it in this case.

The ordinance, though penal, is nevertheless remedial in its character. A penal law may also be remedial, and a statute may be penal in one part and remedial in another. (Sedg. on Stat. and Const. Law, 41; 1 Wils. 126.) The point to be determined, in giving practical application and construction to a statute, is to look at the mischief or defect which existed at the passage of the act, and see what provision the law-making power has made to afford a remedy; and it is the province of the courts to so construe the law as to advance the remedy and suppress the mischief. (1 Blackst. Com. 87.) It is an established rule, applicable to the construction of all remedial statutes, that cases within the reason though not within the letter of a statute shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute. (Mason v. Rogers, 4 Litt. 377; Phillips v. Pope, 10 B. Monr. 172.)

In New York the legislature passed an act prohibiting, after a certain date, the use of set nets or wires for catching fish in any part of the Hudson river between the city of New York and Baker's Falls, other than hoop-nets, fykes, or set nets, constructed with buoys, which were to be used only on the flats, along the flats and shores, and out of the channel of the river. The second section prescribed the penalty for offending against the provisions of the first section, and the third section directed the removal of poles already set. The fourth section, upon which the suit was founded, declared it to be unlawful for any person to fish with seines, etc., in any other part of the Hudson river, or in the waters of the State, at or below the city of New York, after sunset on Saturday in each week until the rising of the sun on the Monday following; and a subsequent section inflicted a penalty of fifty dollars for the offense. It was contended that the fourth section of the act prohibited only such fishing upon the Hudson river above Baker's Falls, inasmuch as the preceding sections had mentioned no other part of the river than that between the city of New York and Baker's Falls. But the court declared that the rule that penal statutes are to be considered strictly, where they acted on the offenders and inflicted a penalty, admitted of some qualification. In the construction of statutes of that description, it had often been held that the plain and manifest intention of the legislature ought to be regarded. A statute which was penal to some persons, provided it was beneficial generally, ought to be equitably construed. (Sickles v. Sharp, 13 Johns. 497.) So, in the Commonwealth v. Bradley, 3 Gray, 456, where the statute provided for the punishment of " a manufacturer of any spirituous or intoxicating liquors for sale, or a common seller thereof," it was held that the punishment extended to a common seller of liquors not manufactured by himself.

The ordinance in question was passed to prohibit the practice, which had grown prevalent, of employing abandoned females in saloons to hand around beer and wait upon customers, and which was found to corrupt and injure the morals of many in the community, especially the young men. That the city council had the power to pass such an ordinance is, I think, beyond doubt.

They possess full authority, under the charter of the city, to regulate the police thereof, and it is their peculiar duty to take the requisite steps to preserve good order and protect the public morals. When it was seen that disreputable women and prostitutes congregated in these low haunts of vice, and there, under the ostensible employment of handing around beer and waiting on customers, attracted large crowds by their lewd and lascivious behavior, it would have reflected little credit on the city government had not an earnest and energetic effort been made to break up the practice and suppress the evil.

It is a familiar principle of law that what cannot be done directly cannot be done indirectly. "*Quod prohibetur per directum, prohibetur et per obliquum.*" Will the law sanction this attempted evasion of its plain reason and intention? The sole object was to destroy, uproot, and exterminate a most mischievous and demoralizing habit — an unmixed evil. But if the persons employed in the degrading avocation can pursue their career with impunity by appearing to be principals, the law is a nullity — it is laughed to scorn.

It is sufficient, however, to say that the etymological meaning of the word "employ" will as well consist with the interpretation here given as the one ascribed to it in the Criminal Court. Such being the fact, and the intention being clear, the remedy must be had in view and advanced, and the mischief suppressed. The law levels its power against any one of the class of persons designated "found employed" in saloons carrying beer, whether they act as proprietors or servants.

I think the learned judge of the Criminal Court erred, and the judgment will be reversed and the defendant discharged. The other judges concur.