# Richmond.

## Tobacco Growers Co-Operative Association v. Danville Warehouse Company, Incorporated.

### March 18, 1926.

1. Statutes—*Construction—Intention of the Legislature—In Pari Materia— Evils Intended to be Cured—Effect to be Given Statute.*—In construing a statute the ourt should seek to discover the intention of the legislature, as ascertained from the act itself when read in the light of other statutes relating to the same subject matter, and in the light of the reasons which led to the passage of the act and the evils which it was intended to cure. If possible, the language used should always be so construed as to give effect to the statute.

2. Words and Phrases—*"Public."*—Some of the definitions given by the legal lexicographers of the word "public" are: "Pertaining to or affecting the whole body of people, or an entire community;" "open or common to all; general; open to common use," and the like.

3. Tobacco Warehouses—*Co-Operative Marketing Act—Acts of 1923, Page 131—Purpose of the Act.*—It clearly appears from the language of the co-operative marketing act (Acts 1923, page 131), when read in the light of the original co-operative marketing act of which it is an amendment, the "true name" statute (Acts 1923, page 129), and the other warehouse acts, that one of its purposes was to prevent all warehouses in Virginia, which serve the public and sell loose leaf tobacco to the public at public auction for farmers, from encouraging members of the association to use fraud and deceit and violate their marketing contracts with the association.

4. Tobacco Warehouses—*Co-Operative Marketing Act—Inducing Members to Break Their Contracts—Public Warehouse—Case at Bar.*—The co-operative marketing act (Acts of 1922, page fifty, as amended by Acts of March 26, 1923, section twenty-five, page 131) penalizes any person, firm or corporation conducting a "public warehouse" who knowingly solicits or permits any member of the association to breach his marketing contract by selling, offering for sale or displaying for sale or for auction such member's products. The instant case was an action by a co-operative association against defendant warehouse company to recover the penalty for inducing a member to break his contract. It appeared that practically all the selling of leaf tobacco by auction in Virginia is now done by open floor auction warehouses similar to the defendant, not one of which

was erected or established under the authority of any court or is supplied with samplers appointed by the Governor.

*Held:* That the term "public tobacco warehouses" was used in the act of March 26, 1923, page 131 according to its ordinary meaning and not in a technical sense, and applied to defendant though not established under section 1348 of the Code of 1919 and not provided with two samplers of tobacco appointed by the governor as required by section 1349 of the Code of 1919.

5. Tobacco Warehouses—*Co-Operative Marketing Act—Acts of 1923, page 131—"Public Warehouses."*—So little, if any, of the loose leaf tobacco is sold in Virginia by public warehouses, within the meaning of section 1358 of the Code of 1919, to hold that the words "public tobacco warehouses" as used in section twenty-five of the act of March 26, 1923, include only the public warehouses which are supplied with two official samplers appointed by the Governor would be to make the act nugatory, and leave uncorrected all of the evil practices it was intended to overcome.

6. Tobacco Warehouses—*Co-Operative Marketing Act—Constitutionality of Clause B of Section Twenty-five of the Acts of 1923, page 131—Whether Title Embraces More than one Object.*—Clause B, section twenty-five of the co-operative marketing act of 1923 (Acts of 1923, page 131) does not violate section fifty-two of the Constitution of 1902, which provides that no law shall embrace more than one object, which shall be expressed in the title.

7. Constitutional Law—*Presumptions in Favor of Constitutionality—Doubt as to Constitutionality.*—Every act of the legislature is presumed to be consitutional, and the courts are powerless to declare an act invalid, except where it appears beyond doubt that it contravenes some provision of the State or Federal Constitution. If the court doubts it must sustain the constitutionality of the statute.

8. Constitutional Law—*Statutes—Title to Embrace no More than one Object—Index.*—While section fifty-two was inserted in the Constitution for a wise purpose and may sometimes prevent surprise upon the legislature and the people by provisions in bills of which the title gives no intimation, it was never intended to require that the title contain a complete index to the act. It should be given a reasonable interpretation, but it is sufficient if the object of the bill be expressed in the title.

9. Co-Operative Marketing Act—*Clause B of Section Twenty-five of the Acts of 1923 (Acts of 1923, page 131)—Title and Object.*—The object of the co-operative marketing act clause B of section twenty-five of the Acts of 1923 [Acts of 1923, page 131], is to embrace the co-operative marketing of farm products in Virginia and this is sufficiently expressed in its title. The organization of co-operative marketing associations, the enforcement of contracts between the association and its members, the minimizing of the violation of contracts by its members and the protection of the association

against those who would knowingly solicit or permit members to breach their contracts—all these subjects are congruous, have a natural connection with, are germane to, and are reasonably necessary for the accomplishment of the one object of the statute, and this satisfies the requirements of section fifty-two of the Constitution of 1902.

Error to a judgment of the Corporation Court of the city of Danville, in an action for penalty. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*Harry Wooding, Jr., John Martin* and *W. T. Joyner,* for the plaintiff in error.

*Meade & Meade,* for the defendant in error.

West, J., delivered the opinion of the court.

This is a writ of error to a judgment for the defendant in a suit instituted by Tobacco Growers Co-Operative Association, hereafter called Association, against Danville Warehouse Company, Incorporated, hereafter called Warehouse Company, to recover the penal sum of $500 and $100 attorney's fees, for inducing A. J. Norman, one of its members, to breach his marketing contract with the Association, in violation of the provisions of the act of the General Assembly of Virginia, approved March 26, 1923 (Acts Extra Session 1923, page 131).

The title, the preamble, and section 25 of the act, which is involved here, are copied in the margin.*

---

* Chapter 110.—An act to amend and re-enact sections twenty-five and twenty-nine of an act approved February 18, 1922, entitled "an act to encourage the co-operative marketing of farm products in Virginia, to provide for and authorize the incorporation of co-operative marketing associations or exchanges and the licensing to do business in Virginia of similar corporations created in other States under similar laws."

The Association is a North Carolina corporation, duly licensed to do business in Virginia. The Warehouse Company operates six warehouses in the city of Danville, for the sale of leaf tobacco at auction, which are similar to all other warehouses in Virginia engaged in selling leaf tobacco at auction. The witnesses, who are men of long experience in the warehouse business, know of no warehouse in Virginia engaged in the sale of leaf tobacco at auction, which was established as a public warehouse by order of court, pursuant to section 1348, chapter 58, of the Code of Virginia, 1919 (Code 1887, sec. 1797), or for which samplers, or inspectors, have been appointed under section 1349 of the Code of 1919.

On November 20, 1924, A. J. Norman, who had signed a marketing contract with the Association, delivered 2,000 pounds of his tobacco on the floor of the Union Warehouse, which was operated by the

Approved March 26, 1923.

Whereas, it is necessary to prevent frauds, perjuries and deceit arising out of the contracts and agreements authorized by said statute; and

Whereas, it was the purpose of the General Assembly in enacting said statute to extend to foreign corporations organized under similar laws the same rights, powers, privileges, and remedies as were granted to co-operative associations organized under said statute and by principles of comity such foreign corporations are entitled to said rights, powers, privileges and remedies and it is desirable to resolve any doubt on said subject; therefore,

1. Be it enacted by the General Assembly of Virginia, That sections twenty-five and twenty-nine of an act approved February eighteenth, nineteen hundred and twenty-two, entitled "an act to encourage the co-operative marketing of farm products in Virginia, to provide for and authorize the incorporation of co-operative marketing associations or exchanges and the licensing to do business in Virginia of similar corporations created in other States under similar laws," be amended and re-enacted so as to read as follows:

Section twenty-five. Inducing breach of marketing contract; damages; spreading false reports about the finances or management of co-operative association.—(a) Any person who knowingly induces any member or stockholder of an association or corporation organized hereunder to breach his marketing contract with the association or corporation shall be liable to the association or corporation for the full amount of damages sustained by it by reason of such breach; and any person who maliciously and knowingly spreads false reports about the finances or management of any such association or corporation shall be liable to the association or corporation

Warehouse Company. After the tobacco had been delivered to the warehouse and prior to the sale, written notice was served on the managers of the warehouse that Norman was a member of the Tobacco Growers Co-Operative Association, and that his tobacco was about to be sold, offered for sale or displayed for sale on the floor of their warehouse. J. H. Wilson, president of the Warehouse Company and general manager of all its warehouses, after being informed by Norman that he was a member of the Association and after being shown the written notice by one of the managers of the Union Warehouse, required Norman's tobacco to be sold at public auction by the auctioneer of Union Warehouse. After deducting the usual commissions on the sale and in addition five cents per pound to be paid the Association as damages provided for in Norman's contract with the Association, a check of the warehouse for the net proceeds of the

aggrieved in a civil suit for the actual damage which it may sustain by reason of such false reports, and also in the penal sum of five hundred ($500.00) dollars for each such act, which may be recovered in the same action.

(b) Any person, firm or corporation conducting a public tobacco warehouse within this State who knowingly solicits or permits any member of any association organized hereunder to breach his marketing contract with the association by selling, offering for sale, or displaying for sale or for auction such member's products contrary to the terms of any marketing agreement of which said person or any member of said firm or any active officer or manager of the said corporation has knowledge or notice, shall be liable to the association aggrieved in a civil suit in the penal sum of not less than one hundred ($100.00) dollars nor more than five hundred ($500.00) dollars for each such offense; and such association shall be entitled to an injunction against such person, firm or corporation, to prevent further breaches and a multiplicity of actions thereon. In addition, said person, firm or corporation shall pay to the association a reasonable attorney's fee and all costs involved in any such litigation or proceedings at law. Provided, however, that no such action or suit by such associations shall lie unless there has been first served upon said person, firm or corporation after said tobacco has been delivered to the warehouse, and prior to the sale thereof, a notice, in writing, stating that the products of a member of such association are about to be sold, offered for sale, or displayed for sale. Such notice may be served by any peace officer or any other person, and the affidavit of the person serving the same shall be *prima facie* evidence of such service. It shall be the duty of any police officer, sheriff, deputy sheriff, constable, deputy constable of this State to serve such notice upon request of any authorized representative of the association, and upon the payment of a fee of fifty cents for each such service.

sale was delivered to Norman. The check for the damages was not delivered to the Association and was exhibited in evidence at the trial.

The case was tried by a jury.

The court refused instructions Nos. 1 and 2, offered by the plaintiff, as follows:

No. 1. "The court instructs the jury that if they believe from the evidence:

"(1) That on the 19th day of November, 1924, one A. J. Norman, a member of complainant Association, delivered to the defendant, Danville Warehouse Company, at the Union Warehouse in the city of Danville, a load of tobacco for sale at auction, and—

"(2) That after said tobacco was so delivered but before the sale of the same a notice in writing stating that the tobacco belonging to A. J. Norman, a member of plaintiff Association, was about to be sold, offered for sale or displayed for sale, on the floor of said Union Warehouse was served on the managers of said warehouse or one of them, and—

"(3) That after the service of such notice said tobacco was sold at auction on the floor of said warehouse under the direction of James H. Wilson, president and general manager of the defendant corporation, by the acutioneer regularly employed by the said defendant to sell tobacco at said warehouse, and that the record of said sale was kept by the regularly employed clerk or clerks at said warehouse, that said Norman was paid for said tobacco by a warehouse check, and that the defendant received the commission charged for the sale of the tobacco.

"Then they shall find for the plaintiff and assess its damages at a sum of not less than one hundred ($100.00) dollars nor more than five hundred ($500.00) dollars."

No. 2. "The court instructs the jury that the Union

Warehouse as operated by the defendant, Danville Warehouse Co., on November 20, 1924, was a public warehouse within the meaning of chapter 110 of the Acts of 1923, by virtue of which this action is brought."

The only instructions given by the court were the following, granted at the request of the defendant:

"The court instructs the jury that before the jury can find for the plaintiff against defendant, they must believe from the evidence that the said Danville Warehouse Company, Incorporated, was at the time of the transaction set out in the notice of motion conducting a public tobacco warehouse in the city of Danville, Va.

"The court further instructs the jury that a public tobacco warehouse is a place established by law for the storage and safe keeping of tobacco, which shall be kept in good repair and at all times be open for receiving, storing, selling and delivering tobacco, with the duty imposed by law upon it of keeping two official samplers of tobacco, who shall be appointed by the Governor, by and with the advice and consent of the Senate, for the term of four years, with the power to issue receipts or manifest for the tobacco received by it, to draw samples therefrom and to perform the other duties prescribed by law for regulating public tobacco warehouses."

The jury returned a verdict for the defendant upon which judgment was entered.

The objections to the judgment, urged by the Association, make it necessary for us to consider only two questions:

1. Was the Union Warehouse a public warehouse within the meaning of the act approved March 26, 1923, chapter 110 of the act of 1923, page 131?

2. If it was, is the act of March 26, 1923, constitutional?

The law as to "inspection and other matters concerning tobacco" is found in the Virginia Code, 1919, chapter 58, sections 1348 to 1399 inclusive. Section 1348 provides that tobacco warehouses, which were public warehouses on the day before the Code takes effect, shall continue to be such; and that the circuit and corporation courts may hereafter authorize the erection of tobacco warehouses, or may establish the same, as public warehouses, which warehouses shall be constructed so as to keep safely, and guard against fire and weather, as far as practicable, all tobacco stored therein, and shall keep the same in good repair, and at all times, except Sunday, open for receiving, storing, selling and delivering tobacco.

Section 1349 provides that for each such public warehouse there shall be two samplers of tobacco who shall be appointed by the Governor, by and with the advice and consent of the senate, for a term of four years commencing on the first day of October succeeding their appointment.

Section 1354 requires the samplers to "uncase and break every hogshead, cask, tierce or box of tobacco brought to their respective warehouses to be sampled; weigh and sample it, and mark or brand the same as "Virginia" or "Western" according to the facts; and, with the name of the warehouse, the tare of the hogshead, cask, tierce or box; the quantity of net tobacco therein, and the condition thereof."

Section 1355 provides that "all leaf tobacco sold upon the floor of *any* tobacco warehouse in the State of Virginia shall be first weighed by some reliable person," who shall have first taken and subscribed the oath prescribed by that section. This section further requires the proprietor of each and every warehouse to render to each seller of tobacco at his warehouse a bill

stating the amount charged for auction fees and commissions and weighing and handling the same.

Under section 1360 samplers are required to receive and weigh all loose tobacco brought to their warehouses and give certificates for the same and by section 1361 are also required, on the delivery of any tobacco to their warehouses, to give a receipt therefor, describing the same as unsampled tobacco.

Section 1386 requires every commission merchant or other person to whom unmanufactured tobacco in hogsheads or packages, owned by a farmer or planter, is consigned for sale, to store such tobacco in a public warehouse, where it is practicable, unless otherwise instructed in writing by the owner, and makes it unlawful to offer such tobacco for sale by sample, unless such sample has been drawn and certified by a sampler of tobacco appointed by the Governor.

The act, approved March 26, 1923 (Acts Extra Session 1923, page 129), requiring leaf tobacco to be sold only in the name of the true owner thereof, and that records of such sales be kept, applies to every warehouseman or co-operative marketing association to which any leaf tobacco may be delivered for sale or display for sale thereof. The term "warehouseman" as used in that act is defined as "any person, firm or corporation engaged in the business of selling leaf tobacco at auction, for commission, or for any other consideration."

The original co-operative marketing act, approved February 18, 1922 (Acts of 1922, page 50), was an act to encourage the co-operative marketing of farm products in Virginia. Realizing that the breaching of their contracts by members of the Association would tend to defeat the purpose of the act, section 25 thereof penalized any "person" who knowingly induced any member

to breach his contract with the Association. By the amendatory act approved March 26, 1923, section 25 was so amended as to penalize any person, firm or *corporation* conducting a public warehouse, who knowingly solicits or permits any member of the association to breach his marketing contract by selling, offering for sale or displaying for sale or for auction such member's products.

It appears from section 1348 of the Code, *supra*, that the term "public warehouse," as used in the earlier statutes, was used in a very restricted sense and is confined to public warehouses which existed prior to the effective date of the Code or have been since established by order of the courts, and, in either event, also maintains two samplers, appointed by the Governor of Virginia. The principal business of the owners of these warehouses is to store, sample and sell tobacco which comes to them in hogsheads, casks, tierces or boxes, and their dealings in loose tobacco would seem to constitute little or no part of their business. The record shows that practically all of the selling of leaf tobacco by auction in Virginia is now done by open floor auction warehouses similar to the Union Warehouse, not one of which was erected or established under the authority of any court, or is supplied with samplers appointed by the Governor.

[1] In construing a statute the court should seek to discover the intention of the legislature, as ascertained rom the act itself when read in the light of other statutes relating to the same subject matter, and in the light of the reasons which led to the passage of the act and the evils which it was intended to cure. If possible, the language used should always be so construed as to give effect to the statute.

In *Fox's Admr.* v. *Commonwealth*, 16 Gratt. (57 Va.) 9,

Moncure, J., said: "In the exposition of a statute, the leading clue to the construction to be made is the intention of the legislator; and that may be discovered from different signs. As a primary rule, it is to be collected from the words; when the words are not explicit, it is to be gathered from the occasion and necessity for the law, being the causes which led the legislature to enact it."

At page 10, Judge Moncure also says: "It is inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. It is, therefore, an established rule of law that all acts *in pari materia* are to be taken together, as if they were one law; and they are directed to be compared in the construction of statutes, because they are considered as framed under one system, and having one object in view. And the rule, it is said, equally applies, though some of the statutes may have expired, or are not referred to in the others."

In *State* v. *Canton*, 43 Mo. 51, Wagner, J., said: "The point to be determined, in giving practical application and construction to a statute, is to look at the mischief or defect which existed at the passage of the act, and see what provision the law making power has made to afford a remedy; and it is the province of the courts to so construe the law as to advance the remedy and suppress the mischief (1 Blackst. Com. 87). It is an established rule, applicable to the construction of all remedial statutes, that cases within the reason though not within the letter of a statute shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute."

In *City of Charleston* v. *Charleston Brewing Co.*, 61

W. Va. 37, 56 S. E. 198, 199, Poffenbarger, J., said: "The limits of application of a statute are generally held to be co-extensive with the evil or purpose it was intended to suppress or effectuate. *Daniel* v. *Simms*, 49 W. Va. 534, 39 S. E. 690; *Kirkpatrick* v. *Deegans*, 53 W. Va. 275. They neither stop short of, nor go beyond, the purpose the legislature had in view."

In *Reaves Warehouse Corporation* v. *Commonwealth*, 141 Va. 194, 126 S. E. 87, it was held that the act approved March 26, 1923, *supra*, requiring leaf tobacco to be sold in the name of the true owner was constitutional and valid. The warehouse there involved maintained no samplers appointed by the Governor, and was engaged in the business of selling leaf tobacco at auction, in the same manner that the warehouse in the instant case was engaged in that business. Prentis, J., speaking for the court (126 S. E. 90, 141 Va.), at page 202, says: "That *public* warehouses are affected with a public interest and hence subject to regulation, has not been questioned since the decision of *Munn* v. *Illinois*, 94 U. S. 113, 24 L. Ed. 77, * * *." (Italics ours.)

In *Danville Warehouse Co.* v. *Tobacco Growers Co-Op. Asso.*, 143 Va. 741, 129 S. E. 739, the Special Court of Appeals, speaking through Crump, P., in passing upon the "true name" statute, held that the act having been declared constitutional by this court in the *Reaves Case*, *supra*, the necessity, justice and expediency of the act regulating the sale of tobacco and business of warehousemen were matters for legislative determination and not judicial questions for the decision of the courts.

[2] In *Irvine* v. *Commonwealth*, 124 Va. 124, 97 S. E. 769, the court, speaking through Whittle, P., said: "Some of the definitions given by Black and other legal lexicographers of the word 'public' are: 'Per-

taining to or affecting the whole body of people, or an entire community;' 'open or common to all; general; open to common use,' and the like. Black's Law Dictionary (2nd ed.), p. 964, and authorities cited."

In *State* v. *Cochrane*, 264 Mo. 581, 175 S. W. 599, the court defines a "public warehouse" as follows: "A warehouseman is a person or corporation lawfully engaged in the business of storing goods for hire. The business is public or private, as it may be conducted for the storage of the goods of the general public, or for those of certain persons."

In *Harrison & Byrd* v. *Wissler*, 98 Va. 599, 36 S. E. 982, Buchanan, J., said: "The object of all interpretation and construction is to ascertain the legislative intent, and, in order to do this, the general rule is that words must receive their ordinary meaning, unless it can be seen that the legislature intended that they should have a more enlarged or a more limited signification."

[3, 4, 5] It clearly appears from the language of the act now under consideration (Acts 1923, page 131), when read in the light of the original co-operative marketing act of which it is an amendment, the "true name" statute (Acts 1923, p. 129), and the other warehouse acts, that one of its purposes was to prevent all warehouses in Virginia, which serve the public and sell loose leaf tobacco to the public at public auction for farmers, from encouraging members of the Association to use fraud and deceit and violate their marketing contracts with the Association. So little, if any, of the loose leaf tobacco is sold in Virginia by public warehouses, within the meaning of section 1358 of the Code, to hold that the words "public tobacco warehouse" as used in section 25 of the act of March 26, 1923, include only the public warehouses which are supplied with

two official samplers appointed by the Governor would be to make the act nugatory, and leave uncorrected all of the evil practices it was intended to overcome.

Our conclusion is that the term "public tobacco ware-house" is used in the act of March 26, 1923, according to its ordinary meaning and not in a technical sense; that the Union Warehouse was a public tobacco ware-house within the meaning of the act, and that the court erred in giving the defendant's instructions above set out.

[6] (b) It is contended that clause (b) of section 25 of the act of March 26, 1923, on which the action was based, violates section 52 of the Virginia Constitution, 1902, which provides as follows: "No law shall embrace more than one object, which shall be expressed in the title; nor shall any law be revised or amended with reference to its title, but the act revised, or the section amended, shall be re-enacted and published at length."

The title to the act reads as follows: "Chapter 110. An act to amend and re-enact sections 25 and 29 of an act approved February 18, 1922, entitled 'an act to encourage the co-operative marketing of farm products in Virginia, to provide for and authorize the incorporation of co-operative marketing associations or exchanges, and the licensing to do business in Virginia of similar cor-porations created in other States under similar laws."

In passing upon the constitutionality of an act of the General Assembly we must bear in mind certain general principles which always apply in such cases.

[7] Every act of the legislature is presumed to be constitutional, and the courts are powerless to declare an act invalid, except where it appears beyond doubt that it contravenes some provision of the State or Federal Constitution. If we doubt we must sustain its con-stitutionality.

In *Button* v. *State Corporation Commission*, 105 Va. 634, 54 S. E. 769, this is said: "The legislative department acknowledges no superior, except the Federal and State Constitutions, and its authority to enact laws unless forbidden by one or the other of these instruments in express terms, or by necessary implication, is paramount."

[8] While section 52 was inserted in the Constitution for a wise purpose and may sometimes prevent surprise upon the legislature and the people by provisions in bills of which the title gives no intimation, it was never intended to require that the title contain a complete index to the act. It should be given a reasonable interpretation, but it is sufficient if the object of the bill be expressed in the title.

[9] It will be observed that section 25 of the act does not make it a criminal offense for a corporation conducting a warehouse to solicit or permit a member of the Association to breach his marketing contract, but simply makes it liable to the Association in a civil suit in a penal sum of not less than $100 nor more than $500 for each offense. The object of the act is to encourage the co-operative marketing of farm products in Virginia, and this is sufficiently expressed in its title. The best results in co-operative marketing could not be attained without the organization of co-operative marketing associations, or exchanges, and the enforcement of the contracts between the association and its members. The violation of contracts by its members would inevitably discourage those who were living up to their contracts, and militate against the success of the Association. To minimize these violations it was necessary to protect the Association against those who would knowingly solicit or permit members to breach their

contracts. All these subjects are congruous, have a natural connection with, are germane to, and are reasonably necessary for, the accomplishment of the one object of the statute. This satisfies the requirements of section 52 of the Constitution.

This court, in *Ingles* v. *Straus*, 91 Va. 209, 21 S. E. 490, states the rule thus: "If the subjects embraced by the act, but not specified in the title, have congruity, or natural connection, with the subjects stated in the title, or are cognate, or germane thereto, the requirement of the Constitution that no law shall embrace more than one object, which shall be expressed in the title, is satisfied."

In *Commonwealth* v. *Brown*, 91 Va. 772, 21 S. E. 357, 28 L. R. A. 110, Judge Riely, speaking for the court, said: "Although the act or statute authorizes many things of a diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. It is, therefore, to be liberally construed and treated, so as to uphold the law, if practicable. Cooley, Const. Lim., p. 175. All that is required by the constitutional provision is that the subjects embraced in the statute, but not specified in the title, are congruous, and have natural connection with, or are germane to, the subject expressed in the title."

For the foregoing reasons, we are of the opinion that the court erred in refusing to give plaintiff's instructions Nos. 1 and 2, and in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

Since the jury could have rendered no proper verdict except for the plaintiff, the verdict and judgment will be set aside and the case remanded to the trial court with directions to impanel a jury to ascertain, in accor--

dance with the views here expressed, the amount of damages, not less than $100 nor more than $500, and the amount of a reasonable attorney's fee, not to exceed $100, which the plaintiff is entitled to recover.

*Reversed and remanded.*