# Staunton

## THE ROBERT BUNTS ENGINEERING & EQUIPMENT COMPANY, ET AL. V. J. E. PALMER, ET ALS.

September 23, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*John S. Draper* and *Showalter, Parsons, Kuyk & Staples,* for the appellants.

*W. H. Colhoun* and *Julius Goodman,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The sole question involved in this controversy is the construction of section 6438 of the Code (as amended by Acts 1932, ch. 329). That section is as follows:

"All conductors, brakemen, engine drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, traveling representatives or laborers, and all persons furnishing railroad iron, engines, cars, fuel and all other supplies necessary to the operation of any railway, canal or other transportation company, and all clerks, mechanics, traveling representatives, foremen and laborers,

and superintendents to the extent of not more than twenty-five dollars per week, who furnish their services or labor to any mining or manufacturing company, *whether* such railway, canal or other transportation or mining or manufacturing company be chartered under or by the laws of this State, or be chartered elsewhere and be doing business within the limits of this State, shall have a prior lien on the franchises, gross earnings and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies, which lien shall be superior to, and have priority over, any amount due by such company for rents, or royalties; and no mortgage, deed of trust, sale, hypothecation or conveyance executed since the first day of May, eighteen hundred and eighty-eight, shall defeat or take precedence over said lien; provided, however, that the lien secured by this section to parties furnishing supplies, shall be subordinate to that allowed to clerks, mechanics, foremen, superintendents, and laborers for services furnished as aforesaid; and provided, that if any person entitled to a lien as well under section sixty-four hundred and twenty-six as under this section, shall perfect his lien given by either section, he shall not be entitled to the benefits of the other; and provided, also, that no right to or remedy upon a lien which has already accrued to any person shall be extended, abridged or otherwise affected hereby."

The undisputed facts may be thus stated: W. R. J. Zimmerman, an individual trading as Virginia Anthracite Coal Company, was the lessee and operator of a coal mine at McCoy in the county of Montgomery. In addition to the lease, Zimmerman was the owner of a large amount of tangible property and also held in fee certain real estate situated in Montgomery county. During the progress of the mine operations Zimmerman became insolvent and upon bill filed for the purpose, a receiver was appointed by the Law and Equity Court of the city of Roanoke, to preserve the assets belonging to Zimmerman. Upon petition of Holman Willis, receiver, all creditors of Zimmerman were re-

quired to present their claims to H. M. Moomaw, special commissioner appointed for the purpose of ascertaining the assets and the creditors of Zimmerman. J. E. Palmer and other alleged labor lienors filed their claims before the commissioner, pursuant, as contended, to the provisions of section 6438 of the Code.

The specific contention of appellees, before the commissioner and before the court, was that section 6438 gives to laborers who furnish their services to any mining or manufacturing company (whether chartered under or by the laws of this State, or chartered elsewhere and doing business within this State), a prior lien on the franchise, gross earnings and on all the real estate and personal property of said company which is used in operating the same.

Appellants, who are general creditors, contended that section 6438 of the Code did not give a laborer in a mine owned and operated by an individual a lien upon the owner's property. Commissioner Moomaw upheld the contention of appellants and reported to the court his conclusion of law, together with the facts upon which it was based. Upon exceptions filed by appellees, the finding of the commissioner was overruled by the court and a decree entered establishing the liens of the labor creditors.

At common law a laborer stood upon the same plane as any other creditor in sharing in the assets of mining or manufacturing companies. His present right as a preferred creditor is of purely statutory origin and had its genesis in the legislative enactment of 1878-79 (chapter 82, section 1), which was carried into the Code of 1887 as section 2485. In the session of the General Assembly of 1891-92 (chapter 224) the original act was amended by adding the word "whether" after the word "company," as shown in the present act.

■ "In construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of other statutes relating to the same subject matter, and in the light of the reasons which led to the passage of the act and the evils

which it was intended to cure." *Tobacco Growers' Co-Operative Ass'n* v. *Danville Warehouse Company, Inc.,* 144 Va. 456, 132 S. E. 482, 485.

As the question is one of first impression, we are permitted, without doing violence to any precedent, to place our own construction upon the statute.

Counsel for appellees have cited us to numerous authorities dealing with cognate subjects but in our opinion the cases cited are dealing with statutes quite unlike the one herein involved. While it is true, as stated, that section 6438 confronts us without construction of the point involved, it is likewise true that this court has construed the statute in other respects and those decisions shed light upon the legislative intent as to the creation of liens against employers.

In *Virginia Development Co.* v. *Crozer Iron Co.,* 90 Va. 126, 17 S. E. 806, 807, 44 Am. St. Rep. 893, the issue before the court was the validity of the statute, it being assailed on the ground that the statute applied to corporations and did not apply to an individual and was, therefore, discriminatory. In holding the statute constitutional the court said:

"That the statute is special in its character—*i. e.,* confined in its operation, so far as the furnishers of supplies are concerned, to those dealing with railway, canal, or other transportation companies or mining or manufacturing companies, chartered under or by the laws of this State, or doing business within its limits, is obvious from its terms, and is not disputed. * * * The statute makes no discrimination against any corporation brought under its influence, but treats all alike under similar conditions; and that is decisive of the question. With the wisdom or unwisdom, the justice or injustice, of the statute we have nothing to do. It was for the legislature to say whether its operation should extend to all persons and corporations, or to those corporations only which are specially mentioned; and the discretion of the legislature in the matter is not subject to judicial interference."

The holding in the above case was re-affirmed in *First National Bank of Richmond* v. *William R. Trigg Co.*, 106 Va. 327, 56 S. E. 158, and by strong implication the conclusion was reached that the statute only applied to corporate employers.

To the same effect is the holding in *Mathews* v. *Meyers*, 151 Va. 426, 145 S. E. 352.

In *Citizens' & Marine Bank* v. *Mason* (C. C. A.) 2 F. (2d) 352, 355, the court was dealing with section 6438 of the Code and this was said:

"The Legislature, in placing railroad, canal, and other transportation companies and mining and manufacturing companies all in one section, plainly had in mind corporations extensive in character, and at least those actually and chiefly so engaged, * * *."

Counsel for appellants argue with great force that the word "company"—as employed in the statute—is an inclusive and not a restrictive term; that it applies to individuals as well as to chartered companies. However, we are unable to concur in this contention. That the word "company" has no reference to an individual is clearly indicated by the descriptive phrase "whether * * * chartered * * *." If the legislature intended to include individual employers it would not have employed the word "chartered," for the very good reason that an individual does not have to obtain a charter to engage in business as an individual.

It is also to be observed that the lien the laborer is to acquire under the terms of the statute is a prior lien on the *franchise*, gross earnings and all the real and personal property of the company. The four pillars upon which the lien must rest are franchise, earnings, real property and personal property. A franchise is an incorporeal hereditament and in a technical sense applies to incorporated bodies. The use of the word "franchise" precludes any idea that the legislative intention was to include an individual employer within the scope of the statute.

Whether or not the legislature acted wisely in restricting the statute to corporations presents a question not involved in this controversy. The statute has been in the Code for a period of fifty years and if any extension of its provisions is made, it will have to be made by the legislature and not by judicial construction.

The decree of the lower court will be reversed and the cause remanded.

*Reversed.*

HUDGINS, J., dissenting.

The provisions of Code, section 6438, read in connection with other statutes creating mechanics' liens, clearly reveal a legislative intent to give to persons, who by their service and labor add value to the finished product, a preferred lien on such product. This section expressly names a class of persons employed by mining and manufacturing companies and gives them a prior lien on all property used in the business. The majority opinion holds that the lien so created is confined to persons employed by corporations and not by individuals or partnerships. This view is too limited and restricted. It seems to me immaterial whether such labor was rendered for a company owned by an individual, or a body of individuals, or an incorporated body. The statute is remediable and should receive a liberal and not a restricted construction.

For these reasons I think the decree of the chancellor should be affirmed.