126   Va. Devel. Co. et al. *v.* Crozer I. Co. et als.

Syllabus.

## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

Virginia Development Co. et al. v. Crozer Iron Co. et als.

### July 6th, 1893.

1. Constitutional Law—*Special legislation.*—Code § 2486 giving liens to persons furnishing supplies to a manufacturing corporation on all its property, superior to deeds of trust, &c., executed since March 21, 1877, is not contrary to amendment 14 to the constitution of the U. S. as being special and class legislation.

2. Construction of Statutes.—Liens for supplies given, by § 2485, priority over deeds of trust, &c., executed since March 21, 1877, are not restricted to deeds of trust, &c., executed between that date and the date of the taking effect of that act, but have precedence over deeds of trust, &c., executed after the latter date.

3. Vested Rights—*Impairment of charter.*—Section 2485 giving prior liens upon the property of manufacturing corporations for supplies is not invalid as impairing the charter right of such corporation to issue its bonds and secure them, as the charter was taken subject to the general law of the State, and such changes as might be made in that law.

4. General Laws—*Private acts—Acts of incorporation.*—Section 4203 excluding from operation of the Code any act passed by the legislature between March 15, 1887, and May 1, 1888, applies only to the acts of a general nature and not to acts of incorporation, which are private acts.

5. Supplies—*What are under § 2485.*—Pig iron furnished a rolling mill, whose business is to manufacture iron, steel, and other metals, is "a supply" within the meaning of § 2485, giving a lien to all persons furnishing fuel and other supplies necessary to the operation of any manufacturing company.

6. Liens for Materials—*Priority.*—Liens given by § 2485 are entitled to precedence as among themselves according to the times at which they are severally filed under § 2486, that first filed taking preference.

Appeal from decree of hustings court of city of Roanoke rendered in the chancery cause wherein the Virginia Develop-

ment Company was complainant and the Roanoke Rolling Mill, the Pocahontas Coal Company, and the Crozer Iron Company were defendants. From the decree in favor of the defendants the complainant appealed. Opinion states the case.

*Griffin & Glasgow* and *Phlegar, Berkely & Johnson,* for appellants.

*Watts, Robertson & Robertson, Penn & Cocke,* and *Kean & Lile,* for appellees.

LEWIS, P., delivered the opinion of the court.

This is a controversy between creditors of the Roanoke Rolling Mill Company, one of the defendants in the court below. The main contest is between the Pocahontas Coal Company and the Crozen Iron Company, claiming to be "supply creditors" of the defendant company, on the one hand, and the appellants, mortgage bondholders, on the other. The defendant company was chartered by the legislature of Virginia by an act approved the 2d day of May, 1887, and is authorized by its charter to erect rolling mills, forges, and furnaces, and to manufacture iron, steel, and other metals. It is also authorized by the ninth section of its charter to issue its bonds from time to time, and to secure the same by mortgage or deed of trust upon its property and franchises, including its franchise to be a corporation.

The bonds held by the appellants, amounting in the aggregate to $25,000, are secured by a deed of trust of the 10th of January, 1890, whereby the company conveyed to a trustee certain real estate, together with all its rights, privileges, and franchises. This deed was duly admitted to record on the 24th of February of the same year.

The claim of the Pocahontas Coal Company for $6,580 33 is for coal furnished the defendant company for the operation of

its works, and that of the Crozer Iron Company for $20,911 51 is for pig iron; and for these claims liens were duly filed in the clerk's office of the hustings court of the city of Roanoke, under sections 2485 and 2486 of the Code.   The first mentioned company filed its lien on the 23d of February, 1891, and the Crozer Iron Company on the 10th of the ensuing March. Section 2485 reads as follows :

" All conductors, brakesmen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary to the operation of any railway, canal or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this State, or doing business within its limits, shall have a prior lien on the franchise, gross earnings, and on all the real and personal property of said company which is used in operating the same to the extent of the moneys due them by said company for such wages or supplies, and no mortgage, deed of trust, sale, hypothecation, or conveyance executed since the twenty-first day of March, eighteen hundred and seventy-seven, shall defeat or take precedence over said lien," &c.

The following section (2486) merely provides how, where, and within what time the lien must be perfected.

1. The validity of this legislation is assailed by the appellants, on the ground that it is unequal and partial; that it is special and class legislation; and in conflict with the fourteenth amendment of the constitution of the United States, which, among other things, provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

This contention strikes at the root of the statute, and, if sound, the statute, or rather the section of the Code in question, is void, independently of the provision giving precedence to the liens for which it provides over mortgages and deeds of

trust. But we are of opinion, both on principle and authority, that the. position is not sound.

That the statute is special in its character—*i. e.*, confined in in its operation, so far as the furnishers of supplies are concerned, to those dealing with railway, canal, or other transportation companies, or mining or manufacturing companies, chartered under or by the laws of this State, or doing business within its limits, is obvious from its terms, and is not disputed. But it does not follow that because the statute is special it is invalid. It has been repeatedly decided by the Supreme Court of the United States, in construing the fourteenth amendment, that it is no objection to a statute that it is special, if all persons subject to it are treated alike under the same conditions.

It is, moreover, well settled by the decisions of that court, beginning with the *Slaughter-House Cases,* 16 Wall., 36, that the fourteenth amendment was not designed to limit, and does not limit, what is known as the police power of the States— that is, in the language of the court in *Barbier* v. *Connolly,* 113 U. S., 27, "the power to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity."

A familiar instance of the exercise of this power is the statute giving a mechanics' lien, which is special in its character, and yet its validity has never been judicially denied because its operation is confined to a particular class. The Poor Man's law is another instance of the same sort. So, in *Barbier* v. *Connolly,* a municipal ordinance, prohibiting washing and ironing in public laundries between the hours of 10 o'clock at night and 6 in the morning, was sustained, although assailed as unwarranted class legislation, in that it discriminated between laborers engaged in the laundry business and those engaged in other pursuits, and thus denied to the former the equal protection of the laws. So, a statute making railroad

companies, whose tracks are not fenced, liable for double damages for injuries to stock on their tracks, has been held not repugnant to the fourteenth amendment, either as the unlawful taking of property, or as denying the equal protection of the laws, notwithstanding it imposes upon railroad companies a special liability that is not imposed upon other persons. *Missouri Pacific R. R. Co.* v. *Humes,* 115 U. S., 512; *Minneapolis Railway Co.* v. *Beckwith,* 129 *Id.,* 26.   And many other instances of a similar nature might be mentioned, some of which are referred to in a note to *State* v. *Goodwill,* 25 Am. St. Rep., p. 884.

A strong case on this point is *Missouri Railway Co.* v. *Mackey,* 127 U. S., 205.   There a statute of Kansas made every railroad company organized or doing business in that State liable for all damages done to any of its employees in consequence of the negligence of its agents or other employees, thus abrogating with respect to railroad corporations the common law doctrine of fellow servants, and leaving it in full force as to all other corporations and individuals.   The statute was accordingly assailed as being special and discriminatory, and in violation of the fourteenth amendment, in that it deprived the defendant company of its property without due process of law, and denied to it the equal protection of the laws.   But it was held that there was nothing in these objections; that the statute made no discrimination against any railroad company, but treated all alike, and, therefore, that there was no evasion of the constitutional rule of equality in such a case.   In the course of its opinion the court, speaking by Mr. Justice Field, said:

"The objection that the law deprives railroad companies of the equal protection of the laws   *   *   seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition, but nothing can be further from the fact.   The greater part of all legislation is special, either in the objects sought to be attained by it, or in

the extent of its application. * * * Such legislation does not infringe upon the clause of the fourteenth amendment requiring equal protection of the laws, because it is special in its character; if in conflict at all with that clause, it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions."

The same principle was reaffirmed in *Minneapolis Railway Co.* v. *Beckwith*, 129 U. S., 26, which case was similar to *Missouri Pacific R. R. Co.* v. *Humes*, *supra*. And in that case it was again declared that the fourteenth amendment, broad and comprehensive as it is, was not designed to limit the police power of the States, and that the nature and extent of legislation upon any subject falling within that power must necessarily depend upon the judgment of the legislature.

These decisions, and the reasons upon which they rest, when applied to the present case, so fully meet the objections that have been urged to the legislation in question, as to render further discussion of the subject unnecessary. The statute makes no discrimination against any corporation brought under its influence, but treats all alike under similar conditions; and that is decisive of the question. With the wisdom or unwisdom, the justice or injustice, of the statute we have nothing to do. It was for the legislature to say whether its operation should extend to all persons and corporations, or to those corporations only which are specially mentioned; and the discretion of the legislature in the matter is not subject to judicial interference. *New York, &c., Railroad Co.* v. *Bristol*, 151 U. S., 556, 570.

2. It is contended, however, that section 2485 of the Code, which went into effect along with the Code on the 1st day of May, 1888, impairs the charter-right of the Rolling Mill Company to issue its bonds and to secure the same, and that this

cannot be lawfully done otherwise than by the exercise of the reserved right to alter or amend the charter, which must be done, if at all, by a special act of the legislature having that object in view.

It is true that, according to the ruling in *Fidelity Trust Co. v. Shen. Valley R. R. Co.*, 86 Va., 1, there was no valid "supply-lien law" in Virginia before the Code was enacted; but a sufficient answer to the position of the appellants is that the company took its charter subject to the general law of the State, and to such changes as might be made in that law. *Penn. R. R. Co. v. Miller*, 132 U. S., 75. "It cannot be successfully contended," said the court in the Mackey case, "that the State may not prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, where no limitation is placed upon its power in this respect by their charters." So, also, when the appellants took the bonds of the company, which were executed and secured in 1890, after the enactment of the Code, they were presumably cognizant of the law then in force giving a prior lien in cases of this sort, and they accepted the security with that legal incident adhering in it. *Provident Institution v. Jersey City*, 113 U. S., 506. So that no amendment of the charter was necessary to bring the company within the operation of that law, nor does section 2485 of the Code operate, nor was it designed to operate, as an amendment of the charter. *Anderson v. Commonwealth*, 18 Gratt., 295.

Judge Cooley, in treating of the police power of the States, after observing that all contracts and all rights are subject to this power, says:

"Perhaps the most striking illustrations of the principle here stated will be found among the judicial decisions which have held that the rights insured to private corporations by their charters, and the manner of their exercise, are subject to such new regulations as from time to time may be made by the State with a view to the public protection, health, and

safety, *and in order to guard properly the rights of other individuals and corporations.* Although these charters are to be regarded as contracts, and the rights assured by them are inviolable, it does not follow that these rights are at once, by force of the charter contract, removed from the sphere of State regulation, and that the charter implies an undertaking, on the part of the State, that in the same way in which their exercise is permissible at first, and under the regulations then existing, and those only, may the corporators continue to exercise their rights while the artificial existence continues. The obligation of the contract by no means extends so far; but, on the contrary, the rights and privileges which come into existence under it are placed upon the same footing with other legal rights and privileges of the citizen, and subject in like manner to proper rules for their due regulation, protection, and enjoyment." Cooley, Const. Lim. (6th ed.), 709. See, also, *New York, &c., Railroad Co.* v. *Bristol,* 151 U. S., 556, 567.

3. The result of these views is that the act itself incorporating the Rolling Mill Company was not affected by the subsequent enactment of the Code, although a new regulation is prescribed by the Code, under which the rights of other persons are guarded and protected, and the rights and privileges granted by the charter to the company are to be exercised or enjoyed. It is hardly necessary, therefore, to notice the point made by the appellants as to the provision of section 4203, excluding from the operation of the Code any act passed by the legislature between the 15th of March, 1887, and the 1st of May, 1888. It may be as well, however, to say that the act of incorporation is a private one, and that the acts referred to in that section are acts of a *general nature.* This is obvious not only from the title of the Code, but from the language of section 4202, which is *in pari materia.*

4. Another point contended for is that supply liens are given precedence by section 2485 only over those mortgages and deeds of trust which were executed between the 21st of March,

1877, and the 1st of May, 1888.  But this was not the intention of the legislature, although its meaning, it must be admitted, is rather awkardly expressed.  The language of the section is that "no mortgage, deed of trust, sale, hypothecation, or conveyance executed *since* the 21st day of March, 1877, shall defeat or take precedence over said lien."  This applies to mortgages, etc., executed as well after the enactment of the Code as before.  No reason can be imagined why the legislature should have otherwise intended, and it is not to be supposed that if such had been the intention, it would not have been plainly and unmistakably expressed.

It is unnecessary, therefore, in view of the foregoing considerations, to decide whether, inasmuch as the Rolling Mill Company is not complaining, it is competent for the bondholders, whose debts were contracted subsequent to the enactment of the Code, to deny the validity of the legislation in question; for be that as it may, the result is the same.

5.  A more difficult question, and in fact the only one in the case about which we have had any doubt is, whether the pig iron furnished by the Crozer Iron Company is embraced within the term "supplies."  The appellants deny that it is.  Their contention is that the term embraces only the incidentals of the business, such as oil, waste, fuel, and the like, and not the raw material from which the product of the concern is manufactured.  In other words, they draw a distinction between supplies necessary to the operation of the plant and the material operated upon.

The statute gives a lien to " all persons furnishing  *  *  *fuel* and all other supplies necessary to the operation of any  *  * manufacturing company," chartered or doing business in this State.  The question, therefore, is whether pig iron is " necessary to the operation of " a rolling mill whose business it is to manufacture, among other things, iron, steel, and other metals.

The statute is a new one, and has not heretofore been construed in this particular, so that we are without the aid of

authority in construing it. The term "supplies" seems not to have a technical or legal meaning, and it is not clear from the face of the statute what meaning was intended to be attached to it. Numerous witnesses, however, experienced in the business of manufacturing iron, were examined, and the preponderance of this evidence is in support of the ruling of the lower court. Indeed, several of the appellants' own witnesses testify in favor of this view. Thus the witness, Murphy, says pig iron and fuel, in cases of this sort, belong to the same class and stand upon the same footing, and the same opinion is given by several other witnesses on the same side. If this view be correct, then, according to the rule of *ejusdem generis*, pig iron, like fuel, is a "supply" within the meaning of the statute. Many witnesses for the appellees testify to the same effect. The statute, moreover, is a remedial one, and, therefore, to be construed liberally, as has been held in regard to statutes giving liens to mechanics and laborers. *Davis* v. *Alvord*, 94 U. S., 545; *Flagstaff Silver Mining Co.* v. *Cullings*, 104 *Id.*, 176. So that, upon the whole, we deem it best to affirm the decree, leaving it to the legislature to remove the obscurity of the statute if, upon its attention being called to the matter, it shall see fit to do so.

We hold, therefore, that section 2485 of the Code is valid and constitutional; that it is not repugnant either to the fourteenth amendment or to anything in the constitution of Virginia, and that both of the "supply liens" in question are paramount to the deed of trust.

6. The decree is also right in giving priority to the lien of the Pocahontas Coal Company over that of the Crozer Iron Company, it having been first filed. In the silence of the statute on the subject, the rule of the common law applies, which establishes liens in the order of their acquisition, the first in order of time standing first in order of rank. 6 Lawson, Rights & Rem., sec. 3093; *Voorhis* v. *Westervelt*, 43 N. J. Eq., 642; 3 Am. St. Rep., 315. This is not so in regard to me-

chanics' liens, because the statute itself forbids priorities in those cases; and the failure of the legislature to so provide in regard to supply liens indicates its intention to leave the common law rule on the subject unaltered, so far as liens of the latter class are concerned.

DECREE AFFIRMED.

NOTE BY THE REPORTER.—On rehearing of the foregoing cause the court adhered to the above opinion, which had been already delivered by LEWIS, P.