In re Leonard W. SNELLINGS, Helen G. Snellings, Debtors.

E. C. DICKENS, Jr. and William F. Miller, Plaintiffs,

v.

Leonard W. SNELLINGS, Helen G. Snellings, Defendants.

Bankruptcy No. 7–80–00669.
Adv. Proceeding No. 7–80–0197.

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

May 8, 1981.

Richard W. Davis, p. q., Davis & Stone, Attys., Inc., Radford, Va., for plaintiffs.

Robert W. Goodlatte, p. d., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

In this case there are three issues for decision:

1. Are the Debtors, Leonard W. and Helen G. Snellings, husband and wife (Debtors) each entitled to claim a $5,000.00 homestead exemption pursuant to Virginia Code § 34–1 et seq.?

2. Are the Debtors entitled pursuant to 11 U.S.C. § 522(f) of the Bankruptcy Reform Act of 1978, to have the Plaintiff's judgment lien avoided as to the claimed exemptions sought to be allowed in Paragraph 1?

3. When the above questions are resolved, what is the status of Plaintiff's claim herein?

The Debtors filed their petition in this Court pursuant to Chapter 13 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1301 et seq. on June 16, 1980. Their plan came on for hearing before the Court on confirmation October 6, 1980. On October 8, 1980 an Order Confirming the Plan was entered subject, however, to a determination of the merits of the Plaintiff's Complaint filed in this Court on August 28, 1980.

The Debtors are joint owners of real estate, their residence, in the community of Shawsville in Montgomery County, Virginia. On May 27, 1977, the Debtors became indebted to the Plaintiffs, E. C. Dickens, Jr. and William F. Miller in the sum of $10,-000.00 upon a demand note without interest with a provision for 25% attorneys' fees and a waiver of homestead exemption; that on December 21, 1979 the Plaintiffs obtained a judgment against the Debtors upon the said instrument in the Circuit Court of the City of Radford in the sum of $10,000.00 with interest from August 5, 1977 and Attorneys' fees in the amount of 25% plus $37.00 costs.

This judgment was duly docketed in the Circuit Court of the City of Radford. On January 17, 1980 it was also docketed in the Clerk's Office of the Circuit Court of Montgomery County, wherein the real estate in question is situated.[1]

Plaintiffs, Dickens and Miller, in their Complaint in this Court seek to have subjected to their judgment lien the real estate of the Debtors to the satisfaction thereof, and further seek leave to proceed with a chancery suit previously instituted in the Circuit Court of Montgomery County, Virginia for that purpose.

The Debtors contend that the Plaintiff's Complaint should be dismissed for the reasons that the Debtors filed separate homestead exemption deeds pursuant to Virginia Code § 34–1 et seq. claiming $5,000.00 exemption each for a total of $10,000.00; that the lien is subject to being avoided pursuant to 11 U.S.C. § 522(f) as to their exemptions and as such, Plaintiffs are entitled to participate only as a secured or unsecured creditor to the extent that the equity value of the property of the Debtors exceed the exemption claimed in Debtors' equity over and above the deed of trust liens.

It appeared from the evidence upon trial of the Complaint that the first and second deed of trust notes total approximately $32,000.00; that the real estate had been listed on the real estate market for a period of time at a price of $45,500.00 and did not sell. An appraisal which was introduced reflects a "cost approach" value of $35,-238.00. Another value of $48,963.00 was placed upon the property which was based upon the result of speculative subdivision activity which might be undertaken in connection with a sale of the property which did not take into consideration attendant cost involved and which would of necessity, have to be considered in such a venture. The appraisal further reflects a "capitalization approach" based on rental factors, of $39,000.00.

1. The abstract filed as an exhibit to the Complaint herein does not affirmatively reflect the waiver of homestead exemption as required by Virginia Code § 34–25. However, this factor is not material to the resolution of the issues in this case.

The evidence further appears from the Debtors' schedules and testimony that the property should bring $45,000.00 as a fair market value with a forced sale value of $36,000.00 diminished by the costs of sale customarily 5–6% plus advertising. (This also is generally the same expense in deeds of trusts as trustees' commissions in foreclosure.)

The facts further reflect that Mrs. Snellings contributed a substantial amount of the down payment upon the purchase price of the real estate from proceeds obtained from the sale of a home previously owned by Mrs. Snellings in Richmond and the monthly payments on the first and second deeds of trust are made by Mr. Snellings resulting in the balance presently due at the time the petition was filed of $32,000.00. Mr. Snellings maintains two jobs, the income from which funds the plan herein.

The threshold issue is the eligibility of the Debtors each to claim $5,000.00 homestead exemption pursuant to Virginia Code § 34–1 *et seq.* The resolution of this issue requires a construction of the Virginia homestead statutes and their recent amendments.

Historically, the word "homestead" as used in popular parlance described real estate used as the home or residence of a family. The term signified a dwelling house with customary appurtenances, including outbuildings that were necessary for use where the family resides. *See* 13 *R.C.L.* Homestead § 8; 40 *Am.Jur.2d* Homestead § 1. The historical purpose of homestead statutes is the preservation of the home for the benefit of the family and the protection of beneficiaries and those dependent upon the head of the household which in olden days was the father and husband who was the bread winner.

As stated in 40 *Am.Jur.2d* Homestead § 4 "The statutes are intended to secure to the householder a home for himself and his family, ..."

The construction placed upon homestead statutes and exemptions claimed thereunder by the Courts has been one of a liberal construction. *See Wilkinson v. Merrill* (1891) 87 Va. 513, 12 S.E. 1015. It is a shield to protect the helpless. *Linkenhoker v. Detrick* (1885) 81 Va. 44.

A remedial statute must be construed liberally so as to afford all the relief within the power of the Court which the language of the statute indicates that the legislature intended. *See Virginia Development Company v. Crozer Iron Company*, 90 Va. 126, 17 S.E. 806. In this case, the Supreme Court of Virginia in construing a statute granting superior lien rights to persons furnishing supplies and fuel in the operation of manufacturing company, included the furnishing of pig iron for a rolling mill. The development company claimed that wording of the statute, to-wit: "all persons furnishing ... fuel, and all other supplies ..." did not include pig iron but only included supplies necessary to the operation of a plant and not items such as pig iron that was furnished and converted into finished products by the manufacturing process. By application of a liberal construction of the statute in the determination of the legislative intent, the Court rejected that contention and held that the creditor who furnished the pig iron was entitled to the superior lien.

In *Jennings v. Commonwealth* 109 Va. 821, 63 S.E. 1080, the Supreme Court of Virginia was construing then criminal statute Virginia Code § 36–77 strictly against the Commonwealth and liberally in favor of the accused. That Section provided:

"if any person, under promise of marriage, seduce and have illicit connection with any unmarried female of previous chaste character, ... shall be guilty of a felony, etc."

The Defendant was convicted and sentenced for the seduction of a divorced woman. The question was whether the word "unmarried female" was intended to describe a female who had not previously been married or whether it included a female who was presently unmarried but may have previously been married and divorced. The Court in construing the intent of the legislature held that the word "unmarried" correctly meant "never having been married". The Court stated at Page 1081 that its

construction was based on the Court's process of time experience and an enlightened public sentiment sought by the legislature to be corrected. Thus, the Virginia courts in the construction of statutes have construed statutes in light of the mischief to be correctly viewed in the present-day enlightened society and the prevailing facts relating thereto.

█ With reference to homestead exemptions, courts employ the most liberal and humane rules of interpretation to insure the unfortunate debtor and his equally unfortunate but more helpless family, the shelter and influence of the object which the exemption provides. *See Calhoun v. Williams,* 32 Grat. (73 Va.) 18.

With the foregoing general principles of statutory constructions expressed by the Supreme Court of Virginia as a backdrop, we review the statute under consideration, Virginia Code § 34–4.[2]

The legislature from time to time, has increased the allotted amount in keeping with the needs of poor debtors. The amount of $2,000.00 prevailed for many decades and was increased to $3,500.00 in 1975 and to the present $5,000.00 by the amendment of 1977. The statute provides that every householder *or* head of a family shall *be entitled to the exemption* (emphasis added). In 73 *Am.Jur.2d* statutes § 241 it is stated

> "in elementary sense the word 'or', as used in a statute, is a disjunctive particle indicating that the various members of the sentence are to be taken separately.

If 'and' is used, such portions of the sentence are to be considered jointly."

Hence, *it would appear that the language* "householder or head of a family" would be all inclusive. The legislature has sought to define the word householder for the purposes of this Chapter covering exemptions. In so doing, it did not define head of a family which is the alternative portion of the qualifying criteria relating to a beneficiary of the homestead exemption.

Virginia Code § 34–1 [3] containing the definition of "householder" has been modified on several occasions by the legislature in recent years. It is thus important to determine the effect of these modifications. Under the historical definition of homestead as hereinabove recited, the word householder was generally considered synonymous with "head of a family", "head of the household" and all such other parlance generally connoting the husband or father in the family who was given the right to claim exempt an interest in the home. The prior definitions of "householder" even until the recent amendment of 1978 to the above statute, defined such person to mean one who occupies a relationship toward other persons with a legal or moral right to support.[4] The definition required a relationship which compelled the duty to support.

It can be readily seen that the legislature has intended in recent years to update and modernize the exemption statute to comport with realistic present-day needs and standards of society. It eliminated any semblance of need to show a relationship or

---

2. § 34–4. *Exemption created.*—"Every householder or head of a family residing in this State shall be entitled, in addition to the property or estate which he is entitled to hold exempt from levy, distress or garnishment under §§ 34–26, 34–27 and 34–29, to hold exempt from levy, seizure, garnishment or sale under any execution, order or process issued on any demand for a debt or liability on contract, his real and personal property, or either, to be selected by him, including money and debts due him, to the value of not exceeding five thousand dollars. The word 'debt', as used in this title, shall be construed to include a liability incurred as the result of an unintentional tort."

3. § 34–1. *Definitions.*—"The word 'householder' as used in this title shall include any

person, married or unmarried, who maintains a separate residence or living quarters, whether or not others are living with him. The term *'laboring person'* shall include any householder who receives wages for his services."

4. § 34–1. Code of Va. prior statute. *Definitions.*—"The word *'householder'* used in this title shall mean one who occupies such a relationship towards persons living with him as to entitle them to a legal or moral right to look to him for support and who, in turn, has the duty of supporting such persons. The word *'householder'* shall be equivalent to the expression 'householder or head of the family,' and the term *'laboring person'* shall be construed to include all householders who receive wages for their services."

any element of support. In so doing, the newly drafted statute has substantial ambiguity. The word "householder" has a well-defined meaning and connotation in contemporary society. It no longer contemplates only a father or a husband as "head of a household". The legislature, after having said householder states that it *shall include* any person, married or unmarried, who maintains a separate residence or living quarters, whether or not others are living with him (or her). (emphasis added)

The courts in construing the word "include" as it relates to statutory construction have generally held it to mean one of extension or enlargement rather than one of limitation. This standard of construction was adopted by the Supreme Court in *American Surety Company, etc. v. Marotta* (1933) 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466, citing numerous authorities. This case involved the construction of the Bankruptcy Act as it related to creditors. In keeping with the rule of liberal construction of the Bankruptcy Act, as is true in the homestead statutes, the Supreme Court stated ". . . the word 'include' should not be construed as a word of limitation, the equivalent of 'include only', and to exclude every person having a demand . . ."

█ Carrying this definition into Virginia Code § 34–1 and the language "shall include" should not be considered a limitation but should be considered an extension or enlargement of the definition "householder."

The legislature intended to make clear that the word "householder" should not be restricted as to the marital status nor place of abode or presence of other persons therein as an eliminating feature of the right to claim a homestead exemption. It would appear that the modernized definition placed upon the homestead statute by the recent enactment is an effort on the part of the legislature to adapt the exemption statutes to present day society and, hence, not deprive an individual of the right to claim essential property thereby reducing to a destitute state of being resulting in such person becoming a burden upon society. *See Richardson v. Woodward* (4th Cir.

1900), 104 F. 873 wherein the Court, held even in 1900, that a wife was a "householder" for the purpose of claiming a homestead exemption, while the husband was a "householder" for the purpose of claiming other poor debtor exemptions. In both instances, the Court had to find that the husband and wife were in fact "householders" for that purpose, although husband and wife and living in the same dwelling house.

This construction was in 1900 when the limitation of the word "householder" was highly restricted in the language of the exemption statutes. This restrictive language, for the most part, has been completely eliminated in the current statute. The present definition does not require a person to be married or single, with a dependent or without such dependent, with or without other persons living in the same "residence" or "living quarters" with the "householder". There is no longer a need for a "residence" in its commonly accepted parlance.

The statute under consideration appears to create in each individual a right to exempt his or her property to the extent of the limitation provided therein of $5,000.00. This is a once in a lifetime exemption, and, of course, may only be claimed once and not successively. This construction of the amended statute is in keeping with the liberal interpretation accorded homestead statutes. It particularly is in keeping with such construction when we consider the modifications enacted by the legislature in recent years which is an effort to up-grade and modernize the purpose of the exemption. See 25 *R.C.L.* Statutes § 237, 73 *Am. Jur.2d* Statutes § 272.

If this Court should apply a strict construction to the statutes under consideration, it would prohibit any application which would deviate from the stated language of the statute. No implication from its wording would be permitted. As the Court in *Jennings, supra*, stated that, strict construction of statutes is that which refuses to extend the law by implication or equitable considerations and confines its opera-

tions to cases clearly within the letter of the statute. Homestead exemption law prohibits such construction. As stated by the Court in *Richardson, supra,* the Fourth Circuit Court of Appeals stated:

"The general rule is that exemption laws should be liberally construed. The constitution of Virginia (article 11, § 7) emphasizes the rule, and makes it more specific, by providing, 'The provisions of this article shall be construed liberally to the end that all the intents thereof may be fully and perfectly carried out.' What was the legislative intent in the adoption of article 11 of the constitution of Virginia, and the acts of assembly in pursuance thereof? "All the intents" to be fully and perfectly carried out? Homestead laws are enacted as a matter of public policy, in the interest of humanity,—that, though a citizen may be overtaken by reverses of fortune, he and those of his household shall not be homeless, without shelter, raiment, and food. The debtors' prison and attendant evils meet with little favor in modern legislation. The policy of the law is that families shall not be deprived of shelter and reasonable comforts. The state is concerned that the citizen shall not be divested of the means of support and reduced to pauperism."

■ Accordingly, it is apparent that the language of the statutes creates in both Debtors herein a right to claim a $5,000.00 homestead exemption in their jointly held property.

Given the choice by Congress in the implementation of the new Bankruptcy Code, 11 U.S.C. § 522(b),[5] whether to accept the Federal exemption scheme, Virginia quickly chose to "opt-out" of the Federal plan and use the already-existing exemptions enumerated in the Virginia Code, *Va.Code Ann.* § 34–3.1 (1980 Cumm.Supp.)[6] This Virginia Code Section only deals with § 522(d) and no other section or subsection.

Therefore, the only section of the new Bankruptcy Code not available to Virginia debtors is 11 U.S.C. § 522(d)(1–11) which sets out the Federal exemptions. Rather, the Virginia legislature, in its wisdom, chose to grant the Virginia debtor only those exemptions available under Virginia common law and those statutes as construed and implemented as the law of the Commonwealth.

■ Because only 11 U.S.C. § 522(d) is not to be applied in Virginia does not affect the Virginia debtor's right to use 11 U.S.C. § 522(a), (b), (c), and (e)–(m). Included in the available sections of § 522 entitled *Exemptions,* is a departure from prior bankruptcy law. Section 522(f), known in common parlance as the "lien avoidance" section, reads in relevant part:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law."

---

5. 11 U.S.C. § 522(b) reads in relevant part: "(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

6. *Va.Code Ann.* § 34–3.1. *Property specified in Bankruptcy Reform Act not exempt.*— "No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this title. (1979, c. 692.)"

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor';

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

Subsection (f) of § 522 grants the so-called avoiding power with regard to any exemption allowed pursuant to 11 U.S.C. § 522(b), as stated, including the state option. If a state opts-out of the Federal exemptions it does not affect, dilute or destroy the debtor's lien avoidance powers under § 522(f). As is stated in 3 *Collier on Bankruptcy* § 522.29 (15th ed. 1979):

"Though the Property on which liens that may be avoided is the same as several of the exemptions allowed by the (Bankruptcy) Code, a debtor who claims the state exemption may avoid a lien in such property to the extent that such an exemption is allowed by the state ... The avoiding power of subsection (f) is independent of any exemption...."

This court has had the opportunity to construe § 522(f)(2) in the case of *In re Bonnie Jean Rodgers*, 5 B.R. 761 (W.D.Va.1980). In that case the question was whether § 522(f) allowed the Debtor to avoid a credi-

tor's nonpossessory, nonpurchase-money security interest in household goods claimed exempt pursuant to the laws of Virginia. The Court ruled that the Debtor could avoid the lien on the enumerated property. In so holding, it was said:

Congress enacted 11 U.S.C. § 522(f) to protect the debtor's exemptions, his discharge and thus his fresh start by permitting him to avoid certain liens on exempt property. 5 B.R. 764 citing H.R.Rep.No. 95–595, 95th Cong. 1st Sess. 362 (1977); S.Rep.No.95–589, 95th Cong.2d Sess. 76 (1978).

As there indicated, Congress looked to the practice of creditors with judicial liens [7] and nonpossessory, nonpurchase-money security interests under the former Bankruptcy Act and concluded that these creditors had an unfair advantage over hapless debtors who more often than not sign agreements and financing documents without any knowledge or understanding of their legal effect or consequences of their signatures.

Other bankruptcy courts have adopted reasoning similar to that used by this Court in *Rodgers supra*. *In re Laird*, 6 B.R. 273 (E.D.Pa.1980); *In re Heard*, 6 B.R. 876 (W.D.Ky.1980) (§ 522(f)(1) equally applicable in Chapter 7, 11, or 13 of Bankruptcy Code); *In re Anspach*, 6 B.R. 700 (E.D.Pa. 1980); *In the Matter of Primm*, 6 B.R. 142 (D.Kan.1980) (held that § 522(f)(1) applies in Chapter 13.[7A]

Some creditors have challenged the constitutionality of § 522(f) on the grounds that it amounts to a retroactive taking of property in violation of the due process provisions of the Fifth Amendments. Those cases,[8] however, involved the ques-

**7.** Judicial lien is defined in the Bankruptcy Code:

"judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. 11 U.S.C. 101(27).

**7A.** If there were any question that § 522(f) did not apply in a Chapter 13 readjustment case, it is laid to rest by the statutory language of 11 U.S.C. § 103(a):

"Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, or 13 of this title."

These are general provisions. (Chapters 1, 3, and 5 apply in the various substantive chapters of the Bankruptcy Code.)

**8.** Though too numerous to mention here, the well-written opinion of *In re Hill*, 4 B.R. 310 (N.D.Ohio 1980) demonstrates the point. See also *In re Amborse*, 4 B.R. 395, 2 C.B.C.2d 267 (N.D.Ohio 1980) and *Head v. Home Credit*, 4 B.R. 521, 2 C.B.C.2d —— (E.D.Tenn.1980) § 522(f) applies in Chapter 13.

**956**

tion of pre-November 6, 1978 judicial liens. Those liens are generally held to be unavoidable; but equally as clear, those liens created after the enactment of the Bankruptcy Reform Act of 1978, November 6, 1978, are implicitly subject to the debtor's power to avoid liens on exempt property under section 522(f). In the case at bar, the lien in question was docketed on December 21, 1979, so there is no question of a retroactive taking of property, the date of the judgment docketing being after November 6, 1978.

There being no question about the construction of the statute, we do not have to comment on the waiver language found in § 522(f).

CONCLUSION

From the foregoing analysis, the Court concludes that each Debtor is entitled to claim their separate $5,000.00 homestead exemption and that such exemption may be relieved of the burden of the Plaintiff's judgment lien pursuant to 11 U.S.C. § 522(f).

The only remaining issue therefore, is the status of the Plaintiff's claim No. 10 filed herein jointly by E. C. Dickens, Jr. and William F. Miller in the amount of $14,969.00.

The evidence on this point establishes that the property in question has a fair market value of $45,000.00. The deed of trust notes totaling $32,000.00 plus the $10,000.00 homestead exemptions leaves a remaining equity supporting the judgment of the Plaintiffs of $3,000.00. The Plaintiff should be permitted to claim as a secured creditor to the extent of $3,000.00 upon a payment schedule to be hereafter fixed in a manner that will provide adequate protection upon proper application of the Plaintiffs, Debtors, or the Trustee. The remaining portion of said claim is allowed subject to proper objections by the Debtor as to such amount, as a general unsecured claim with further leave to the Debtor to file objections to said claim as to the amount due and owing as they may be so advised or as the Trustee may assert.

Order will accordingly, be so entered.