In the Matter of LACKOW BROTHERS, INC., Debtor.

No. 81–2556–CIV–EPS.

United States District Court, S. D. Florida.

July 2, 1982.

## ORDER AFFIRMING BANKRUPTCY COURT AND MEMORANDUM OPINION

SPELLMAN, District Judge.

This is an appeal from the bankruptcy court. The appellants are the co-trustees of the debtor Lackow Brothers, Inc. (Lackow). The appellee is Walter E. Heller & Company Southeast Inc. (Heller).

Lackow had executed and delivered to Heller a promissory note evidencing a loan in the principal amount of $500,000.00. Accompanying this note was an Inventory Loan Security Agreement which granted Heller a lien on merchandise, and other tangible property owned by Lackow. This inventory Loan Security Agreement was duly perfected by filing a financing statement with the Secretary of State of Florida. Lackow also executed and delivered to Heller an Accounts Financing Security Agreement providing for a lien encumbering all accounts receivable.

Lackow filed its Voluntary Petition under Chapter 11. At this time, Heller was in joint control with Lackow of a substantial portion of Lackow's inventory, and Heller was also collecting Lackow's accounts receivable. The Chapter 11 proceedings were later converted to Chapter 7 liquidation proceedings, and trustees were appointed. Pursuant to 11 U.S.C. §§ 362, 363, Heller filed suit seeking a determination of the validity, priority and extent of its lien, as well as relief from the automatic stay. Heller desired to obtain possession of Lackow's inventory and exercise its rights as a secured creditor in Lackow's inventory and accounts receivable.

At trial, evidence established that Lackow owed Heller in excess of $1,300,000.00. The above-mentioned Promissory Note (Note), and Inventory Security Loan Agreement, along with copies of various filed financing statements and modifications evidencing perfection of Heller's lien were introduced into evidence.

The co-trustees did not challenge the amount due Heller or the perfection of Heller's lien. However, the co-trustees argued that there were ambiguities in the contract between the parties which should be construed against Heller who drafted the contract. In addition, the co-trustees argued that there were contractual provision in conflict, which meant that any typewritten sections of the contract would take precedence over printed sections. Applying the above contract principals to the case at bar, the co-trustees contend that Heller's secured claim was limited to $500,000.00 by a typewritten provision of the Note.

The bankruptcy court found the co-trustees argument "bottomed on a faulty premise." The rules of construction cited by the co-trustees are, according to the bankruptcy court, only applicable where provisions of a contract are in conflict with one another. In the bankruptcy court's view, it was first necessary to examine the situation to determine if a conflict existed. In order to accomplish this examination, the court applied some basic rules of contract construction to determine the intent of the parties. Basically the bankruptcy court considered the whole agreement of the parties to ascertain their intent. The bankruptcy court did not look to any isolated phrase or paragraph of the contract, but examined and compared all the various parts of the contract to find the parties intent. See 11 *Fla. Jur.* 2d, *Contracts* § 121. The bankruptcy court concluded that the three relevant instruments in question here read together constituted a harmonious whole. Therefore, the bankruptcy court rejected the co-trustees' argument

and found that Heller had a duly perfected first priority lien on all inventory and accounts receivable of Lackow in the amount of $1,383,004.79 plus interest.

ISSUE

The co-trustees appealed the decision of the bankruptcy court. The single issue for our review is whether Heller had a valid, duly perfected first priority lien upon all the inventory and accounts receivable of Lackow in the amount of $1,383,004.79 plus interest, or was the agreement to limit the lien to $500,000.00.

ANALYSIS

If this court finds that the bankruptcy judge's findings of fact were clearly erroneous, it must reverse that court's decision. *Bankruptcy Rules* 752 and 810. If a bankruptcy judge commits error in connection with his conclusions of law the same must be set aside. *Matter of Multiponics Inc.* 622 F.2d 709, 715 (1980). However, after reviewing the record in this case and examining the arguments in both briefs, the court is of the opinion that the bankruptcy court was correct in its findings of fact and conclusions of law.

The appellants cite well-known principles of contract construction such as: an ambiguity is construed against the party drafting the contract, *Tannen v. Equitable Life Ins. Co. of Washington D.C.,* 303 So.2d 352, 354 (3rd DCA 1974): and that, when contractual provisions are in conflict, specifically prepared provisions in conflict with type-written ones, the type-written ones take precedence over printed ones. *MacIntyre v. Green's Pool Service, Inc.,* 347 So.2d 1081, 1084 (3rd DCA 1977). With these provisions in mind, the appellants argued that by its type-written additions, the note limited the maximum amount of the loan and the lien created in connection therewith. This type-written language is as follows:

This is an open-end promissory note for the maximum sum of $500,000.00 and is intended to evidence all advances made to the undersigned on a revolving basis up to that amount, which advances are secured (in accordance with an Inventory Loan Security Agreement) by all present and hereafter acquired inventory, wherever located, and the proceeds and products of such inventory, consisting of, but not limited to, gold, diamonds, precious and semi-precious stones, and accessories, parts substitutions and replacements thereto, and all related items in process and finished, and present and hereafter acquired materials [1] used or usable in manufacturing, processing, packaging and shipping same, and computer programs and systems owned or operated in connection therewith; together with a security interest under any and all insurance policies and the proceeds thereof, now or hereafter issued covering said inventory; all of the above securing present and future advances, and which advances are also secured by any collateral afforded Payee by Maker or any third-party on behalf of Maker.

In the event that Maker repays all of its obligations due Payee pursuant to an Accounts Financing Security Agreement, or any other agreement, or in the event that Maker shall default in the same, then and in either event, Payee, at its option, may declare the entire unpaid balance under this note, together with accrued interest, to be due and payable. The loan described herein, as well as a loan secured by the accounts receivable of the Maker, or any other loan or loans made to the Maker hereof, shall be considered one loan secured by all of the collateral afforded Payee of every kind, nature or description, and a default in one loan shall constitute a default in all loans.

The appellant claims that this added type-written language evidences the parties true intention. Moreover, notwithstanding the expressed cross-collateral provisions in the Note and both Security Agreements, the appellants contend both agreements contain an express provision that each Security Agreement and all other agreements between the same parties constitutes one loan; and therefore, the typed portion of the Note takes precedence over the printed portions of the Note thereby limiting the Heller lien to $500,000.00.

An examination of both the Inventory Loan Security Agreement (Exhibit 4) and the Accounts Financing Security Agreement (Exhibit 2) indicates that Heller was granted an unlimited security in all inventory, proceeds and accounts receivable of Lackow. Moreover, both Security Agreements include an express provision granting Heller a security interest in all collateral described in the documents, whether subsequent loans or advances made by Heller to Lackow were evidenced by additional notes or not. Each of the Security Agreements contained the following language:

"3.b ... it is agreed that all loans or advances made by Heller to Borrower whether evidenced by such promissory note or not shall be entitled to the security of the lien created by this agreement."

Exhibit 2 and 4.

The conflict between the type-written and printed provisions of the contract simply does not exist. None of the relevant documents indicate any language limiting Lackow's total liability to Heller. The documents do indicate that the parties contemplated entering several commercial loan agreements, and in order to secure those loan agreements, Lackow would grant Heller a security interest in its inventory and proceeds. These agreements provided for cross-collateralization:

"All loans and advances by Heller to Borrower under this Agreement and all other agreements constitute one loan, and all indebtedness and obligations of Borrower to Heller under this and under all other agreements, present and future, constitute one general obligation secured by collateral and security held and to be held by Heller hereunder and by virtue of all other agreements between Borrower and Heller now and hereafter existing."

Exhibit 2 ¶ 10, Exhibit 4 ¶ 10. As asserted by Heller (the appellee) "[t]he $500,000.00 the sum property typed in the appropriate space, simply evidences the principal amount of the obligation due Heller by Lackow on the Note dated September 24, 1980 (Exhibit 3) and nothing more." Brief of Appellee at 7. Finally, a letter agreement executed by Heller and Lackow, dated December 10, 1980 and admitted along with the Accounts Financing Security Agreement as part of Exhibit 2 provides:

"Heller agrees that the line of credit granted Lackow is $1,500,000.00 and such line of credit is subject to the terms and conditions of the Accounts Financing Security Agreement and Inventory Loan Security Agreement both dated 9/24/80."

Lastly, with regard to appellants reliance on *Safe Deposit Bank and Trust Co. v. Berman,* 393 F.2d 401 (1st Cir. 1968) to support their arguments that Lackow's liability to Heller is limited to $500,000.00 this court finds that the case is distinguishable from the present case. In *Berman,* a single security agreement was expressly limited by its own terms to securing a specific note. The note in question in the *Berman* case was fully paid. The First Circuit Court of Appeals was thus obligated to affirm a judgment of the bankruptcy court that the security agreement did not secure other subsequent notes held by the same creditor. Lackow (the appellant) argues that the Heller transaction, like that in *Berman* was intended to be a single purpose agreement; i.e., Heller to lend up to $500,000.00 a loan which would be secured by inventory and other chattels limited by that sum. As noted above, the language of the several documents do not bear out such a limitation on the collateral security agreement. The bankruptcy court in considering the single purpose agreement argument and the *Berman* case distinguished it as follows:

"The problem is created by a security agreement which is confined by its terms to the specific note it secures .." 393 F.2d at 402. In the instant case, however, there is not one security agreement, but two, each of which expressly provides for cross-collateralization and for security for other and future advances, whether or not evidenced by notes. Here, the Inventory Loan Security Agreement is not expressly limited to the specific Note of even date, and the Note here at issue has never been fully paid. Accordingly, this case falls well outside the narrow

facts on which the decision in [*Berman*] is grounded.

This Court, therefore, rejects the Co-Trustees' argument and finds and concludes that Heller has a valid, duly perfected lien on inventory and accounts receivable to the full extent of the outstanding and unpaid debt owed by the debtor.

No. 81–00485–BKC–SMW, Adv. No. 81–0386–BKC–SMW–A. Based upon all the above, this Court concludes that the bankruptcy court was correct. Therefore, the decision of the bankruptcy court is expressly affirmed.