225 B.R. 124 (1998)
In re Paul B. BRICE, Jewel H. Brice, Debtors.
Thomas L. BLAIR, Appellant,
v.
CRESTAR BANK, Appellee.
No. Civ.A. 98-0016-H.
United States District Court, W.D. Virginia, Harrisonburg Division.
September 11, 1998.
*125 David W. Earman, Harrisonburg, VA, Joseph M. Mott, Rockville, MD, for appellant.
Mark Bowman Callahan, Clark & Bradshaw, P.C., Harrisonburg, VA, for appellee.

*126 MEMORANDUM OPINION

MICHAEL, Senior District Judge.
This case comes to the court on appeal from the January 15, 1998 order of the United States Bankruptcy Court for the Western District of Virginia granting the motion of Appellee, Crestar Bank ("Crestar") for relief from stay. Appellant Thomas L. Blair ("Blair") urges the court to reverse the bankruptcy court's ruling, because, he argues: first, that Crestar's security interest in the property at issue lapsed for failure to follow state law renewal requirements; and second, that Crestar's 1996 loan does not constitute a future advance on the 1992 security agreement having priority over the 1993 loan advanced by Blair. For the reasons set forth below, the court affirms the bankruptcy court's decision on both issues.

I.
The parties stipulated to a list of agreed facts in bankruptcy court and argue only issues of law on appeal. Debtor Paul Brice ("Brice") was the owner of a 1937 Lockheed 12-A aircraft, valued at $150,000 as of the hearing in bankruptcy court. In 1992, Brice used the aircraft as collateral for a loan from Crestar in the amount of $45,000. A security agreement for the loan was completed February 3, 1992 but in that agreement, the amount of indebtedness was left blank.[1] Crestar's security interest in the aircraft was perfected by filing with the Federal Aviation Administration (FAA) on March 6, 1992.
Then, in August 1993, Brice used the aircraft to secure yet another loan, this time by Blair in the amount of $150,000. This loan was also made with an accompanying security agreement which was perfected by appropriate filing with the FAA in September 1993. The amount owed on that loan is $178,000.[2]
Crestar made an additional loan to Brice in 1996, this time with both Brice and his wife Jewel as signatories. The loan amount was $143,957.04, including a consolidation of the previous $45,000 loan. No new security agreement was executed for this 1996 loan, and no additional filing was made with the FAA. The amount owed Crestar under this 1996 loan is $143,957.04 plus $12,337.31 in interest.
The Brices are now in bankruptcy proceedings. The parties dispute the priority of their liens on the Lockheed aircraft. Appellant argues first that Crestar's security interest lapsed in 1997 because it failed to follow Virginia law requiring renewal every five years of any security interest. Appellee argues, and the bankruptcy court agreed, that because federal law governs the filing of security interests in aircraft, federal law preempts the five-year renewal requirement under Virginia law.[3] Second, appellant argues that the loan in 1996 constituted a new loan, not a future advance on the 1992 security agreement, and therefore is of lower priority than the 1993 loan made by Blair. Appellee answers that the language in the 1992 security agreement and the 1992 loan is expansive enough in their references to what the collateral covers that the 1996 loan should properly be considered an advance on the 1992 agreement.

II.
Under 28 U.S.C. § 158(a), the standard of review is de novo for legal conclusions and clearly erroneous for factual findings. In re Tudor Associates, Ltd., II, 20 F.3d 115, 119 (4th Cir.1994). Here, review is de novo because this appeal involves only legal conclusions.

A. Duration of Security Interests in Aircraft
The court first scrutinizes Blair's claim that although Crestar's security interest in *127 the aircraft was perfected in 1992, it lapsed in 1997 because Crestar did not file a renewal or continuance with the FAA. This claim fails in light of the plain meaning of both Virginia and federal law and Crestar's steps to comply with both sources of law. According to Blair, federal law is "silen[t] on the question of duration and renewal of perfection," therefore state law requirements for renewal every five years apply. Blair argues that because Virginia law requires renewal every five years, perfection that is achieved by filing with the FAA must also be renewed every five years, but with the FAA rather than the state.
Under the Federal Aviation Act, security interests in aircraft must be recorded with the Administrator of the FAA. See 49 U.S.C. § 44107. After a security instrument is recorded with the FAA, it is valid "against all persons, without other recordation." 49 U.S.C. § 44108(b). The validity of the underlying instrument that is recorded with the FAA is governed by state law. See 49 U.S.C. § 44108(c).
Virginia law accommodates the Federal Aviation Act's recordation system by providing that its own requirements for filing of security interests do not apply to security interests subject to "a statute or treaty of the United States which provides for a national or international registration." Va.Code Ann. § 8.9.302(3). The Official Comment to this section provides examples of the types of federal statutes contemplated and makes specific mention of 49 U.S.C. § 1403 (aircraft). The Virginia Code further provides specifically that:
Compliance with a statute or treaty described in subsection (3) of this section is equivalent to the filing of a financing statement under this title, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in § 8.9.103 on multiple-state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this title.
Va.Code Ann. § 8.9.302(4) (emphasis added).
Ordinarily under Virginia law, a security interest is perfected by filing a financing statement with state authorities, and the filed financing statement is effective for five years from the date of filing. See Va.Code Ann. § 8.9-403(2). To extend the effectiveness of a filed financing statement, a continuation statement may be filed within six months of expiration of the five-year period. See Va.Code Ann. § 8.9-403(3).
In order to advance his argument that Crestar's security interest lapsed after five years, Blair wrests meaning from the regulations implementing the Federal Aviation Act, title 14 of the Code of Federal Regulations. According to these regulations, state law governs "the validity of any instrument, eligible for recording under this part." 14 C.F.R. § 49.17(c). Blair interprets validity of an instrument to include its ongoing effectiveness or duration. However, the plain meaning of 14 C.F.R. § 49.17(c) is that when an instrument is provided to the FAA for recordation, if that instrument itself is in some way invalid as a matter of state law  for example, if it is fraudulent or improperly executed  then recordation does not cure the defect in the underlying instrument. However, if the underlying instrument was valid under state law  and neither party in this case contends that it was not  the recordation with the FAA is also valid and the security interest is perfected. Blair acknowledges that perfection of security interests in aircraft is governed by federal law, and case law bears this out. See Appellant's Brief at 10 and Fitzgerald v. Idaho First Nat. Bank (In Matter of Disney, Inc.), 24 B.R. 155, 156 (Bankr.D.Idaho 1982).
Blair attempts to use another federal regulation to support his contention that federal law and state law accommodate the kind of a renewal or continuation he urges. However, that regulation, 14 C.F.R. § 49.17(d)(4), refers only to amendment or supplement to a conveyance recorded by the FAA, requiring that such amendment or supplement must meet all the requirements for recording the original conveyance. Manipulating the natural *128 meaning of amendment or supplement, Blair asserts that a security interest formed in Virginia must be re-filed with the FAA every five years as an amendment or supplement to the original filing.
The amendment or supplement allowed by 14 C.F.R. § 49.17(d)(4) logically refers to actual changes in a conveyance, as when equipment is added to an airplane and an amendment must be filed to clarify that the new equipment is also subject to the security agreement. The words "amendment" and "supplement" cannot be understood in their plain meaning to cover renewal.[4] If renewal were anticipated by the federal regulation, the drafters would have used the word renewal.
In fact, even if the federal statute is silent on the question of duration, as Blair contends, state law is not so silent. Crestar properly points to Va.Code Ann. § 8.9.302(4), quoted above, which makes absolutely clear that duration and renewal are governed by federal, not state requirements. The language in 14 C.F.R. § 49.17(c) deferring to state law for determining validity of the underlying instrument recorded with the FAA has nothing to say about ongoing effectiveness of that security instrument, as explained above.
Blair's recitation of case law fails to bolster his argument that the state five-year lapse provision should be imposed on filings with the FAA. For example, Gary Aircraft  cited by Blair in support of his argument that state law governs all aspects of security interests in aircraft other than recordation  speaks only to the issue of whether priority of various interests in aircraft are governed by state or federal law. See Gary Aircraft Corp., 681 F.2d 365, 369 (5th Cir.1982) (acknowledging that the courts have split on the question of whether assignment of priorities has been preempted by the federal statute). But Crestar does not argue that state law should not govern the assignment of priorities in this case.[5] The other cases cited by Blair on this point also speak to preemption, but not to the specific question of duration or renewal at issue in this case. See, e.g., Bellanca Aircraft Corp., 850 F.2d 1275, 1278 (8th Cir.1988) (question of when an airplane transfer is valid against a judgment creditor of the transferor is governed by state law, citing cases that hold that priority of interests is a question of state law); Haynes v. Gen. Elec. Credit Corp., 582 F.2d 869 (4th Cir.1978) (Federal Aviation Act does not preempt state law rule that a buyer takes chattels free of security interest created by seller).
Though there may be areas where the interrelationship of federal and state law provisions regarding security interests in aircraft is unclear, duration of a security interest is not such an area. The Virginia Code clearly states that duration and renewal of a security interest are left to federal law. Federal law answers with no requirement of renewal or refiling to prevent lapse of an interest properly recorded by the FAA. The Virginia Code does not make an offer; it offers a command that federal law governs duration. Rather than manipulating federal regulations to impose a state law type of renewal requirement, this court takes the sensible view that the combined intent of federal and state law is to provide that valid security interests in aircraft, properly recorded with the FAA, have indefinite duration. While Blair makes a valiant attempt to force the federal regulations to accommodate a renewal requirement, the more logical reading of the law favors Crestar.

*129 B. Priority of the 1996 Crestar Loan
Blair's second argument is that even if the 1992 loan has priority over the 1993 loan by Blair, the 1996 loan does not have priority over the 1993 loan. The court agrees with Crestar and the bankruptcy court in characterizing the 1996 loan as a future advance on the 1992 security agreement, which did not specify the amount of indebtedness it was intended to cover.
If the 1996 loan was a future advance, it has priority over loans made after the initial security agreement but before 1996. Virginia law provides that future advances enjoy the same level of priority as the original security interest:
If future advances are made while a security interest is perfected by filing, the taking of possession, or under § 8.8-321 on securities, the security interest has the same priority for the purposes of subsection (5) of this section with respect to the future advances as it does with respect to the first advance.
Va.Code Ann. § 8.9-312(7). Example 5 in the official comment describes the effect of future advances in situations like the present case:
On February 1 A makes an advance against machinery in the debtor's possession and files his financing statement. On March 1 B makes an advance against the same machinery and files his financing statement. On April 1 A makes a further advance, under the original security agreement, against the same machinery (which is covered by the original financing statement and thus perfected when made). A has priority over B both as to the February 1 and as to the April 1 advance.
If the 1996 loan by Crestar fits the definition of a future advance rather than an entirely new and separate loan, then the present case is perfectly analogous to the situation described by the comment and Crestar has priority over Blair both as to the 1992 and as to the 1996 advances.
Blair cites case law for the principle that intent of the parties determines whether future advances are covered by a security agreement. For example, in Kitmitto, the court held (1) that the intent of the parties was determinative of the question of whether a security agreement covers future advances, and (2) that the required intent can be determined from the written instrument itself if its words are `clear and unambiguous.' See Kitmitto v. First Pennsylvania Bank, N.A., 518 F.Supp. 297, 299 (E.D.Pa.1981). Similarly, in Berman, the court looked to the language of the original security agreement, rather than the language of the subsequent notes, to determine whether the security agreement covered future advances. See Safe Deposit Bank and Trust Co. v. Berman, 393 F.2d 401, 404 (1st Cir.1968).
Even under the case law used by Blair, the security agreement signed by Brice with Crestar in 1992 has the requisite clear and unambiguous language necessary to determine that it covers future advances. Said security agreement contains the following language:
. . . in order to secure the payment of all indebtedness, obligations and liabilities of the Debtor to the Bank or to the Bank's parent corporation or any subsidiary of the Bank or such parent corporation, whether now existing or hereafter created or acquired, whether direct or indirect, absolute or contingent, matured or unmatured, now existing or hereafter arising, including extensions and renewals thereof . . .
Ex. B to Crestar's Motion for Relief from Stay (emphasis added).
Further support for the contention that both parties intended in 1992 that the security agreement cover future advances can be found in the fact that no amount of indebtedness was specified within the security agreement itself, although a $45,000 advance was made almost simultaneous to completion of the security agreement. In addition, the 1996 loan was made without executing any new security agreement, thereby demonstrating the parties' intent to advance additional amounts under the 1992 security agreement. Furthermore, the note for the $45,000 advanced in 1992 also clearly mentions the possibility of future advances. Under the heading, "Collateral" the 1992 loan agreement states:

*130 The Collateral is security for the payment of this Note and any other liability (including overdrafts and future advances) of the undersigned to the Bank, however evidenced, now existing or hereafter incurred, matured or unmatured, direct or indirect, absolute or contingent, several, joint, or joint and several, including any extensions, modifications or renewals.
Ex. A to Blair's Response to the Motion for Relief of Stay (emphasis added).
The above-quoted language also refutes Blair's argument that the 1996 loan must be considered a novation due to the fact that it was made to both Mr. and Mrs. Brice while the security agreement and the 1992 loan were made to Mr. Brice alone. The "joint, or joint and several" language admits of the possibility that a future advance could be made to Mr. Brice and others jointly and still fall under the original security agreement.
Blair's recitation of the Virginia common law elements of a novation also fail to bolster his argument. The case law defines the requisite elements of a novation as "a previous valid obligation, the agreement of all parties to the new contract, and the validity of the new contract." Honeywell, Inc. v. Elliott, 213 Va. 86, 189 S.E.2d 331, 334 (1972). While these elements are necessary, they are not automatically sufficient to show a novation. The case law also repeatedly cautions that to find a novation, "there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed." Id. See also, J.M. Turner & Co., Inc. v. Delaney, 211 Va. 168, 176 S.E.2d 422, 425 (1970), Dillenberg v. Thott, 217 Va. 433, 229 S.E.2d 866, 868 (1976). Such clear and definite intention can be found  as can the intent to allow for future advances  in the language of the documents relating to the transaction. See J.M. Turner, supra id. Thus the same language in the security agreement and notes that demonstrates the intent of the parties to allow for future advances based on the single security agreement executed in 1992 also demonstrates that the parties did not intend the 1996 loan to be a novation. Even if the language is open to more than one interpretation, there is certainly not enough evidence to constitute "clear and definite" proof of intent to create a novation.
In addition to the fact that the 1996 loan shows both Mr. and Mrs. Brice as signatories, Blair points to the facts that (1) the 1996 note is marked an "original loan," and (2) the account number assigned to the 1996 loan is different from the previous account numbers. See Appellant's Brief at 13. However, these facts do not constitute clear and definite proof that the parties intended a novation in 1996 when viewed amidst the totality of the language in all the relevant documents.
Therefore, the 1996 loan is most logically viewed as a future advance. As the bankruptcy court stated, the language in the security agreement and the 1992 note are expansive and all-encompassing enough to cover future advances such as the 1996 loan. The 1996 loan enjoys the same priority status as the 1992 loan and both Crestar loans have priority under Virginia law over the 1993 loan by Blair.
Based on this reasoning, the judgment of the bankruptcy court is affirmed.
An appropriate Order shall this day issue.

ORDER
For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED
as follows:
(1) The judgment of the bankruptcy court shall be, and it hereby is, affirmed.
(2) This case shall be, and it hereby is, dismissed and stricken from the docket of this court.
The Clerk of the Court is hereby directed to send a certified copy of this Order and accompanying Memorandum Opinion to all counsel of record and to Judge Krumm, United States Bankruptcy Judge for the Western District of Virginia.
NOTES
[1] The aircraft already had one lien on it at the time of the Crestar loan, held by NationsBank in the amount of $35,641.08 as of December 2, 1997, but that lien is not at issue here.
[2] Loan amounts have not been updated to reflect accrual of interest since briefs were filed with the court.
[3] Crestar filed a renewed financing statement according to Virginia state law in 1997, before the five-year period expired, but Appellant claims that Crestar should properly have filed a renewal with the FAA rather than state authorities.
[4] Typical dictionary definitions of amendment imply some change or correction rather than renewal. Webster's defines amendment as "act of amending esp. for the better: correction of a fault or faults: reformation." Webster's Third New International Dictionary 68 (1961). Black's Law Dictionary defines amendment as "to change or modify for the better. To alter by modification, deletion, or addition." Black's Law Dictionary 74 (5th ed.1979). Supplement cannot be understood to support the meaning Blair asserts either. Webster's defines supplement as "something that supplies a want or makes an addition; something that completes, adds a finishing touch, or brings closer to completion or a desired state." Webster's Third New International Dictionary 2297 (1961).
[5] In fact, Crestar relies on the Virginia Code in its argument on both this issue and in addressing the second issue in this claim to assert that its security interest has priority over Blair's.