In re ENFOLINC, INC., Debtor.

Bankruptcy No. 98–15535(MVB).

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 24, 1999.

Thomas P. Gorman, Tyler, Bartle, Burke & Albert, PLC, Alexandria, VA, for Debtor.

Alexander M. Laughlin, Gold Stanley Morrison & Laughlin PC, Alexandria, VA, for Virginia Commerce Bank.

Robert B. Nealon, Nealon & Moran, L.L.P., Alexandria, VA, Henry Counts, Alexandria, VA, co-counsel for Nicholas J. Naclerio & Associates.

Richard J. Stahl, Fairfax, VA, for Nancy Deering.

C. thomas Brown, Silver & Brown, P.C., Fairfax, VA, for intervenor Brigitte Custer.

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

Today we make a determination as to the priority and extent of competing liens. The claimants asserting competing claims are, Virginia Commerce Bank ("VCB"), Nancy Deering ("Deering") and Naclerio & Associates, Inc. ("Naclerio").[1] We exercise jurisdiction over this controversy under 28 U.S.C. § 1334 and 157(a) and find that this is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

The debtor filed for protection under Chapter 11 on July 24, 1998. Thereafter, on October 27, 1998, this court entered an order authorizing the sale of the bulk of the debtor's assets to OfficePro, Inc. free and clear of liens with all existing liens to attach to the proceeds. Each claimant asserts a senior interest in the proceeds of the sale. The proceeds will not satisfy all of the liens, which forces this matter to

---

1. After the hearing on this matter was held, Brigitte Custer, nee Konrad ("Custer") moved to intervene. The motion was granted and, in accordance with this court's ruling, Custer timely filed a memorandum of law in support of VCB's position and in opposition to the positions of both Deering and Naclerio.

issue requiring that we make this determination.[2]

VCB asserts a first priority lien on all of the debtor's assets and contends that its interest attaches to the proceeds of the sale. The debtor and VCB entered into a security agreement on February 9, 1996 to secure a promissory note for $75,000 also dated February 9, 1996. The debtor executed a financing statement which VCB caused to be filed with the State Corporation Commission on February 26, 1996 and with the Clerk of the Fairfax County Circuit Court on February 28, 1996. Thereafter, on several occasions VCB renewed and refinanced the original loan with some modifications in the terms and with additional collateral pledged to secure the increased amounts loaned. VCB did not cause any other financing statement to be filed.

VCB contends that the security agreement contains a clause providing that any future indebtedness the debtor may incur with VCB is included in the original security agreement. This clause is commonly referred to as a future advance clause as codified at VA.CODE ANN. § 8.9–312(7). VA. CODE ANN. § 8.9–312(7). This Virginia Code provides that if future advances are made by a secured creditor to the debtor while a security interest is perfected, the security interest has the same priority with respect to future advances as it does with respect to the original advance. *Id.* VCB made several additional advances to the debtor by renewing, replacing or extending new credit to the debtor. VCB also notes that the security agreement contains an after-acquired clause giving it a security interest in all property acquired by the debtor after execution of the security agreement. VA.CODE ANN. § 8.9–204(1).

Deering also claims an interest in the proceeds. Deering sold the stock of Innovative Training Associates, Inc., of which Deering was sole shareholder, to Enfolinc for $225,000. Deering was to receive $25,000 cash at settlement, a promissory note for $200,000 for a five year term, and a security interest in all of Enfolinc's assets. Deering filed a financing statement with the Clerk of the Fairfax County Circuit Court on March 26, 1996 and with the State Corporation Commission on March 27, 1996.

She claims that her security interest should be deemed senior to VCB's because VCB was aware that Deering was taking a junior lien. Deering argues that originally, VCB's loan was to be a $75,000 credit line and that was the provision upon which Deering based her acceptance of a junior lien. Now however, the debtor owes VCB almost $200,000 which Deering did not anticipate when she agreed to take the subordinate position.

Nicholas Naclerio & Associates, ("Naclerio") also claims a security interest in the funds. Naclerio operated a training center in Fairfax County that conducted computer training for corporate and federal employees. Naclerio had ongoing accounts with various businesses in the area. In the spring 1996, Mr. Naclerio sought to sell the business. After negotiating with individuals for the debtor, Mr. Naclerio and the debtor entered into a Purchase and Sale Agreement. The agreement stated Naclerio was selling its assets to OAS and that Enfolinc was the buyer's guarantor.[3] Naclerio received a promissory note for $180,000 from OAS and granted a security interest in all assets Naclerio transferred to OAS pursuant to the Purchase

---

**2.** An unsecured creditor, John D'Angelo, also appeared at the hearing asserting a claim for unpaid expenses. However, because Mr. D'Angelo is an unsecured creditor, he will be paid with the other unsecured creditors on a pro rata basis if any assets remain after distribution to the secured creditors. *See* 11 U.S.C. § 507.

**3.** OAS was formed specifically to purchase Naclerio. The same individuals were principals of both OAS and Enfolinc. Custer was the president of OAS and the Chief Financial Officer of Enfolinc. James Hagedorn ("Hagedorn") was the president of Enfolinc and secretary of OAS.

and Sale Agreement. Naclerio perfected its security interest by filing a financing statement with the Virginia State Corporation Commission on June 14, 1996 and with the Clerk of the Fairfax County Circuit Court on June 19, 1996.

In connection with the sale Mr. Naclerio transferred all of the ongoing business relations he had developed to OAS. It is asserted that eventually, the assets of OAS were merged with Enfolinc's assets. Accordingly, Naclerio claims that it holds a first priority lien on all of the collateral pledged by OAS, including the revenue generated from OAS accounts.

The issue arises on a motion to determine the validity and extent of liens on the debtor's property. Although Bankruptcy Rule 7001 requires an adversary proceeding to be commenced in order to determine the validity, priority, or extent of a lien, there is authority which holds that failure to commence an adversary is not a jurisdictional defect and may be waived. *In re Robinson*, 217 B.R. 527, 530 (Bankr. E.D.Tex.1998) (citing *In re Lawler*, 106 B.R. 943, 957 (N.D.Tex.1989)). These authorities have reasoned "where the rights of the parties have been adequately presented no prejudice results from consideration of the issues on the merits." *Id.* In the case at bar, it is undisputed that all parties waived the commencement of an adversary proceeding and agreed to continue via motion practice.

█ It is also undisputed that all parties have a valid, perfected security interest in the collateral in which each party asserts an interest. *See* VA.CODE ANN. 8.9–303(1). Pursuant to the security agreement, VCB has a first priority lien on all of the debtor's assets because it was the first entity to file a financing statement indicating a security interest in the collateral. VA.CODE ANN. 8.9–312(5). When Deering obtained the security interest in the debtor's collateral, she was aware that VCB had the priority lien against the debtor.

█ The primary purpose of a financing statement is to put the public on notice that the secured party may have a security interest in property of the debtor. All other parties have the duty to further inquire and investigate the extent of the security interest. *First Am. Bank of Md. v. Rinn (In re Advance Insulation & Supply, Inc.)*, 176 B.R. 390, 398 (Bankr.D.Md. 1994) (citing *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.)*, 960 F.2d 1242, 1247 (4th Cir.1992)); *In re South Atl. Packers Assoc., Inc.*, 30 B.R. 836, 839 (Bankr.D.S.C.1983) (stating "filing [of financing statement] provides notice to the world of the perfected security interest").

On the basis that the original loan from VCB was in the form of a line of credit up to $75,000, Deering argues that she should not be relegated to a subordinate position because she accepted this position believing that the debtor would only be indebted to VCB in an amount not to exceed $75,000. This argument ignores the fact that the security agreement between the debtor and VCB provides that it

> may be amended or modified from time to time. [Further, it states that the indebtedness includes] all principal, interest, and fees, costs and expenses, if any, together with all modifications of and renewals, replacements and substitutions for any of the foregoing. 'Indebtedness' also includes all other present and future liabilities and obligations of Grantor to Lender, whether direct or indirect, matured or unmatured and whether absolute or contingent, joint, several or joint and several, and no matter how the same may be evidenced or shall arise.

The recent opinion, *Blair v. Crestar Bank (In re Brice)*, 225 B.R. 124 (W.D.Va. 1998) which arises out of the Western District of Virginia held that the following language was sufficient to constitute a future advance clause so as to find that the initial loan by Crestar had priority:

> in order to secure the payment of all indebtedness, obligations and liabilities

of the Debtor to the Bank or to the Bank's parent corporation or any subsidiary of the Bank or such parent corporation, whether now existing or hereafter created or acquired, whether direct or indirect, absolute or contingent, matured or unmatured, now existing or hereafter arising, including extensions and renewals thereof. . . .

*Brice,* 225 B.R. at 129. In addition that court found, that the security agreement between the parties contained clear and unambiguous language to indicate that the parties intended future advances to be covered by the security agreement. *Id.* In the instant case, the language in the security agreement is sufficient to constitute a future advance clause thereby making VCB the first priority lienholder.

It is well-settled that the future advances made by VCB do not constitute another loan but merely an advance of the original transaction. With respect to future advances, it has been widely held that

Even where the parties originally contemplate a single debt, secured by a single item of property or a single group of items, the secured party and the debtor may enter into further transactions whereby the debtor obtains additional credit and the secured party is granted more security.

\* \* \*

[P]arties may use future-advance clauses and after-acquired clauses, and they are of great convenience. But if they are not used, there is nothing in the code which prevents the parties from accomplishing the same result by entering into one or more additional security agreements. . . . The better view holds that, where originally a security agreement is executed, an indebtedness created, and a financing statement describing the collateral filed, followed at a later date by another advance made pursuant to a subsequent security agreement covering the same collateral, the lender has a perfected security interest in the collateral not only for the original debt but also for the later advance.

*James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis,* 292 Minn. 277, 194 N.W.2d 775, 784 (1972); *see Allis–Chalmers Credit Corp. v. Cheney Inv., Inc.,* 227 Kan. 4, 605 P.2d 525, 529 (1980) (quoting *James Talcott* with approval).

There is authority which has found that despite the fact that an original agreement acts as line of credit, any additions or extensions beyond the line of credit are also covered by the security agreement if the security agreement contains a future advance clause. *In re Lackow Bros., Inc.,* 22 B.R. 1018, 1020 (S.D.Fla.1982); *see First Bank of S.D. v. Asbridge (In re Asbridge),* 45 B.R. 564, 567 (Bankr.D.N.D. 1984); *Ixonia State Bank v. Ingersoll (In re Ingersoll),* 8 B.R. 912, 918 (Bankr. W.D.Wis.1981) (finding notation on security agreement limiting amount to $25,000 not enforceable where limitation was not relied on by debtor in obtaining loans and the security agreement clearly contained future advance clause).

Here, VCB has a properly perfected first priority security interest in all of the debtor's assets. Deering's argument that she should recover all amounts owed after the bank collects $75,000, is without merit. The security agreement clearly provides for future advances. As such, Deering has a subordinate lien to that of VCB.

■ In an alternative argument, Deering suggests that this court should employ the doctrine of *in pari materia* to find that the original loan was merely a line of credit and that Va.Code § 55–58.2 would be instructive in dealing with future advances on a line of credit. *In pari materia* requires that the statutes relate to the same person or thing or having a common purpose. "This rule of statutory construction, that statutes which relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments, applies only when the particular statute is ambiguous." BLACK'S LAW DICTIONARY 791 (6th ed.1990).

■ "When the General Assembly uses different terms in the same act, it is

presumed to mean different things.... 'In construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of the other statutes relating to the same subject matter.'" *Campbell v. Commonwealth*, 13 Va.App. 33, 409 S.E.2d 21, 24 (1991) (quoting *Robert Bunts Eng'g & Equip. Co. v. Palmer*, 169 Va. 206, 192 S.E. 789, 790–91 (1937)) (citation omitted). In *Moreno v. Moreno*, 24 Va.App. 190, 480 S.E.2d 792 (1997) the Circuit Court of Fairfax County employed the doctrine to find that Va.Code §§ 20–107.1 and 20–107.3 were compatible and should be read together to determine the General Assembly's intent. *Moreno*, 480 S.E.2d at 792.

■ Deering asserts here that the language of VA.CODE ANN. § 55–58.2 concerning future advances under a line of credit secured by real property should apply. The Virginia Code provides if the credit line is modified then any subsequently recorded deeds of trust take priority over the future advances granted by the modification. VA.CODE ANN. § 55–58.2(7). This argument is not persuasive.

■ The doctrine of *in pari materia* sought to be imposed in this situation clearly does not apply. First, the statute being interpreted must be ambiguous. In this case we are dealing with VA.CODE ANN. § 8.9–312(7) which is not ambiguous. The statute clearly states that "if future advances are made while a security interest is perfected by filing ... the security interest has the same priority ... with respect to the future advances as it does with respect to the first advance." VA. CODE ANN. 8.9–312(7). Cases analyzing the statute have questioned what language a future advance clause should contain, but not the effect the statute has on the priority of a security interest. *See Brice*, 225 B.R. at 129 (reviewing language to determine if sufficient to constitute future advance clause); *see also James Talcott*, 194 N.W.2d at 784 (stating that future advance clauses are of great convenience to par-

ties); *Allis–Chalmers Credit*, 605 P.2d at 529.

■ Second, the doctrine requires that the statutes being compared relate to the same thing or have a common purpose. Here, although both statutes relate to the priority of security interests, VA.CODE ANN. § 55–58.2 relates only to real property whereas title 8.9 of the Virginia Code relates only to the regulation of security interests in personal property and fixtures. *Compare* VA.CODE ANN. § 8.9–102(a) with VA.CODE ANN. § 55–58.2. Clearly there is not only a different purpose to the statutes, but in addition, the subject matter governed by the statutes is not the same. Accordingly, we find that the doctrine of *in pari materia* does not apply. The fact that a credit line serves as the basis of the original agreement is irrelevant. Deering had a duty to investigate further and should have discovered that the security agreement contained a future advance clause permitting the extension of additional credit beyond the limit provided for in the original loan documents upon which she claims to have relied.

■ Deering urges this court to order VCB to marshal its assets. In addition to all of the debtor's assets, VCB also has a security interest in two certificate of deposit accounts assigned to VCB by James Hagedorn ("Hagedorn"), shares of The PBHG Funds, Inc., as well as an account with The PBHG Funds, Inc. assigned to VCB by Custer, a home life insurance policy owned by Donna Hagedorn and a home life insurance policy owned by Hagedorn. Deering also has an interest in all of the assets of the debtor but not in the additional assets pledged as collateral as listed above. Accordingly, she is seeking to compel VCB to collect against the other collateral first.

■ Marshaling of assets is an equitable doctrine employed when one party has a lien or interest in two sources for his debt and another party has a lien or interest in only one of the same funds. *Virginia Block Co. v. Bank of Christiansburg*, 6 B.R. 670, 673 (Bankr.W.D.Va.1980). One

requirement for the doctrine to be invoked, is that the both sources of payment must belong to the same debtor. *Savings and Loan Corp. v. Bear,* 155 Va. 312, 154 S.E. 587, 595 (1930); *Peery v. Elliott,* 101 Va. 709, 44 S.E. 919, 920 (1903) (citing *Blakemore v. Wise,* 95 Va. 269, 28 S.E. 332, 333 (1897); *Russell v. Randolph,* 67 Va. 705, 26 Grat. 705, 718 (1875)). Here, all of the additional collateral, other than the assets of the debtor, were pledged by individuals, not the debtor, and are not owned by the debtor. As such, marshaling of assets is inapplicable in this instance. VCB may seek to satisfy its lien with the funds generated by the sale of the debtor's assets.

■ We then turn to the dispute involving a claim for the same collateral in which both VCB and Naclerio claim a priority interest. As discussed above, Naclerio has a priority security interest in all assets it sold to OAS. OAS is related to the debtor in that the principals of the debtor are the same principals of OAS. First, Naclerio claims that it is entitled to the accounts receivable generated by contracts it sold to OAS. It relies on the debtor's financial statements which specifically earmarked accounts receivable from OAS Systems Training. Second, Naclerio urges this court to find that a security interest remains in the contracts sold by the debtor to OfficePro.

Addressing the issue involving the accounts receivable first, we find Naclerio is entitled to the accounts receivable traceable to OAS Systems Training to satisfy the debt. Naclerio's security agreement with OAS includes a security interest in all accounts receivable of OAS. The debtor's financial statements clearly indicate that funds were received on account of the OAS Systems Training covered by Naclerio's security agreement. Further, VCB does not have a security interest in any of OAS's assets. Where funds are traceable and are identified in a security agreement, that security interest will attach to the collateral. *See Unsecured Creditors Committee v. Marepcon Fin. Corp. (In re*

*Bumper Sales, Inc.),* 907 F.2d 1430, 1437 (4th Cir.1990); *In re Union Meeting Partners,* 178 B.R. 664, 677 (Bankr.E.D.Pa. 1995). Accordingly, Naclerio has a priority perfected interest in these funds that are identified and traceable to OAS.

■ The second issue is whether Naclerio's security interest continues in the contracts sold to OfficePro. Brigitte Custer, the intervenor ("Custer") claims the assets sold to OfficePro are only those of the debtor as the Order only authorized the sale of the debtor's assets. It is well established that the party asserting a security interest has the burden of proving it has a security interest in the property. *See Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.),* 206 B.R. 536, 549 (Bankr.C.D.Cal.1997); *Union Meeting Partners,* 178 B.R. at 677; *In re Grant Broadcasting of Philadelphia, Inc.,* 75 B.R. 819, 823 (E.D.Pa.1987).

Mr. Naclerio testified that he reviewed the list of assets sold to OfficePro and concluded the only active accounts generating revenue were accounts from his former client list that were sold to OAS. As such, Naclerio claims the security interest remains perfected in the contracts sold to OfficePro. However, Mr. Naclerio did not establish conclusively that the contracts sold were actually the contracts covered by the security agreement with OAS. This blanket statement does not provide support to demonstrate the contracts had been sold from Naclerio to OAS and then to OfficePro.

Furthermore, the Order allowed only that the debtor's assets to be sold, and required that the sale be made free and clear of liens. Custer submitted copies of two contracts, one with National Aeronautics and Space Administration and the other Defense Logistics Agency employing the debtor as a systems training source. Both of these organizations were previously on the list of contracts sold from Naclerio to OAS. It is apparent that the organizations entered into new contracts with the debtor. Finally, after comparing the client list sold to OAS with the client list sold to

OfficePro, we find it is clear that not all of the contracts sold to OfficePro were on the list of contracts sold to OAS. Because the party asserting a security interest has the burden of proof, we conclude Naclerio did not meet its burden in demonstrating its security interest in the contracts.

We find, based on the fact that Naclerio failed to present evidence of its security interest in any of the assets sold to Office-Pro, VCB has a first priority security interest in the remainder of the funds pursuant to the security agreement and this court's Order of this court granting the sale of the debtor's assets.

An order will be entered granting Naclerio a first priority lien on all accounts receivable representing the funds attributable to the OAS System Training; granting VCB a first priority security interest in the remaining funds generated from the sale of the debtor's assets; and granting Deering a junior interest in the remaining funds which is consistent with this memorandum opinion.